**REED SMITH LLP**
*Formed in the State of Delaware*
**Diane A. Bettino, Esquire**
**Princeton Forrestal Village**
**136 Main Street, Suite 250**
**Princeton, N.J. 08540**
**Tel. (609) 987-0050**
**Attorneys for Defendant,**
**American Home Mortgage Servicing, Inc.**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY – CAMDEN VICINAGE

-------------------------------------------------X

| | | |
|---|---|---|
| JOHN W. OLIVER, III<br>Individually and as a class<br>representative on behalf of others<br>similarly situated | : <br> : <br> : <br> : <br> : | Civil Action No: 1:09-cv-00001-NLH-JS |
| Plaintiff, | : <br> : | Motion Return Date: April 6, 2009 |
| v. | : <br> : | |
| AMERICAN HOME MORTGAGE<br>SERVICING, INC.; AND JOHN<br>DOE SERVICERS 1-100 AND<br>JOHN DOE LAW FIRMS 1-10, | : <br> : <br> : <br> : <br> : | **CERTIFICATION OF DIANE A.<br>BETTINO, ESQ.** |
| Defendants. | : <br> : <br> : <br> : <br> : | |

-------------------------------------------------X


I, Diane A. Bettino, Esq., do hereby certify as follows:

1.     I am an attorney-at-law in the State of New Jersey and a partner with the law firm of Reed Smith LLP, counsel to Defendant American Home Mortgage Services, Inc. in the above-captioned action.

2.     Attached hereto as **Exhibit A** is a true and correct copy of Plaintiff John W. Oliver, III's Complaint in this matter.

3.     Attached hereto as **Exhibit B** is a true and correct copy of the account notes from Plaintiff John W. Oliver, III's account indicating that Reinstatement Quote was faxed to Plaintiff's attorney Angelo Falciani, Esq.

4.     Attached hereto as **Exhibit C** is a true and correct copy of the Order in *Boothby v. Melendez*, Docket No. A-4001-07T1.

4.     Attached hereto as **Exhibit D** is a true and correct copy of the Order in *Allen v. LaSalle Bank, N.A., et al.*, Civil Action No. 08-2240 (AET).

5.     Attached hereto as **Exhibit E** is a true and correct copy of the Order on the Motions to Dismiss in *Whittingham v. MERS*, et al., 2007 U.S. Dist. LEXIS 33476, *13 (D.N.J. 2007).

Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing statements made by me are true and correct.  Executed this 13th day of March 2009, in Princeton, New Jersey.

/s/ DIANE A. BETTINO

# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
(CAMDEN VICINAGE)

ROGER C. MATTSON, ESQUIRE
26 Newton Avenue
Woodbury, NJ 08096
(856) 848-4050
Attorney for JOHN W. OLIVER, III
Plaintiff

| | |
|---|---|
| JOHN W. OLIVER, III   : <br> Individually and as a class representative : <br> On behalf of others similarly situated   : <br>   : <br> **Plaintiff**   : <br>   : <br>        **vs.**   : <br>   : <br> AMERICAN HOME MORTGAGE   : <br> Servicing, Inc.   : <br> AND JOHN DOE SERVICERS 1-100   : <br> AND JOHN DOE  LAW FIRMS 1-10   : <br>   : <br> **Defendant**   : | <br><br><br><br> <u>CIVIL ACTION</u> <br><br><br> CLASS ACTION <br><br> COMPLAINT <br> AND JURY TRIAL DEMAND |

Plaintiff, JOHN W. OLIVER, III residing at 1122 Mullica Hill, Swedesboro,

County of Gloucester and State of New Jersey,  individually, and as private attorney

general, and on behalf of others similarly situated, by way of Complaint says:

<u>PARTIES</u>

1.  The Plaintiff, JOHN W. OLIVER, III,   owns the residential property

located at 1122 Mullica Hill, Swedesboro,, County of Gloucester and State of

New Jersey.

2.  The Defendant, American Home Mortgage Servicing (AMERICAN), whose

headquarters are located at 4600 Regent Boulevard, Suite 200, Irving, Texas

75063, solicits and does business throughout the State of New Jersey, inclusive

of Gloucester County.


## VENUE AND JURISDICTION

3.      Jurisdiction before the court is based upon a federal cause of action

from a claim arising under the "Fair Debt Collection Practices Act" 15

U.S.C. 1692 et. seq.

4.      Venue is proper in this court pursuant to 28 U.S.C. 1391(b).


## BACKGROUND

14.   The mortgage and note dated July 30, 2003 executed by the Plaintiff are

documents signed under seal which were originated by Option One Mortgage,

Corp.

15.   Option One Mortgage was a non-depository licensed lender licensed in

the State of New Jersey pursuant to NJSA 17:11C-1. et seq.

16.   A foreclosure proceeding was instituted on behalf of Option One

Mortgage against the Plaintiff on the mortgage on or about January 3, 2008.

17.   On or about July 1, 2008, the loan was transferred or assigned to

AMERICAN.

18.   The Plaintiff requested a reinstatement quote from the Defendant.

19.   The Plaintiff received a reinstatement quote dated September 11, 2008

which requested  a total of $31,155.30 inclusive of attorneys fees of $1935.00

and foreclosure costs of $1518.00. Exhibit A.

20. AMERICAN prepared the reinstatement quote.

21. On or about September 19, 2008, the Plaintiff paid AMERICAN the full $31,155.30 demanded.

22. AMERICAN'S attorney in the foreclosure subsequently prepared a reinstatement quote dated September 26, 2008 which demanded a total of $29,403.48 inclusive of attorneys fees and costs of $1701.18.

23. The Defendant then dismissed the foreclosure action with prejudice and discharged the mortgage and Lis Pendens.


## FACTUAL ALLEGATIONS:
## DEFENDANT'S WRONGFUL CONDUCT

25. At all times relevant hereto, AMERICAN has engaged in a uniform scheme and course of conduct to inflate their profits by charging and collecting various fees not authorized by the loan documents or applicable law. The components of this scheme involve common tactics in which the Defendant has been overcharging defaulting borrowers of residential mortgages in the following manner, including but not limited to:

   a) they charged attorneys fees and costs in excess of those actually incurred; Specifically, in the instant case the Defendant demanded and was paid $3453.00 in attorneys fees and costs when only $1701.18 were due.

   b) costs of suit charged to the Plaintiff and class was excessive in violation of statute and court rule; Specifically, R 4:42-10 limits the taxable costs for

3

searches at a minimum of $75 to 1% of the amount due but in no case more than $500. In the instant case the amount allowed would be $500.

c)   recording fees charged were excessive of the actual fee; i.e. to file and discharge a lis pendens the fee was $60.00

d)   Overcharging for the service of process. The statutes and court rules limit the reimbursement to a maximum of $35 per Defendant.

e)   Charging the borrower for obtaining a certificate of regularity which is not a fee which can be charged to a borrower.

f)   In addition the Plaintiff contends that the Defendant overcharged the class as follows:

    i.   over charging of sheriff's commissions by failing to properly credit deposits;

    ii.   charging excessive interest by continuing to charge the contract rate after a judgment of foreclosure was entered when entitled to the judgment interest rate;

## CLASS ACTION ALLEGATIONS

26.   The Plaintiff repeats each and every previous allegation and incorporates them by reference herein as if they were set forth fully herein.

27.   The Plaintiff brings this action on behalf of all persons similarly situated and pursuant to Fed. R.Civ.P. 23 as a class action on behalf of a statewide class of persons as defined below.

4

28. The claims of the named class representative and the absent class members have a common origin and share a common basis. Their claims originate from the same illegal, fraudulent, unconscionable and/or negligent business practices of the Defendant, and the Defendant act in the same way toward the Individual Plaintiff and the members of the class. As such, the individual Plaintiff has been a victim of the unconscionable business practices.

29.   The actions of the Defendant are not isolated but represent a general and consistent business practice.

30.   The actions of the Defendant have affected similarly situated individuals throughout the State of New Jersey.

31.   The Plaintiff proposes a class as 1) Individuals who have had home loans held or serviced by the Defendant, AMERICAN, in the State of New Jersey from sixteen years prior to the filing of the complaint through the date of class certification; and 2)  who received a payoff or reinstatement statement from the Defendant whose home loan was in default; 3)and who were charged attorneys fees and/or other costs which were in excess of the amount actually incurred and/or in excess of the amount allowed by law.

a)   A subclass exists for claims from six years prior to the filing of the complaint through the date of class certification which includes claims under the New Jersey Consumer Fraud Act and New Jersey Truth-In-Consumer Contracts, Warranty and Notice Act.

b)   A subclass exists for claims from one year prior to the filing of the

complaint through the date of class certification which includes claims

under the Fair Debt Collection Practices Act.

34.   The proposed class representative states a claim upon which relief can be

granted that is typical of the claims of absent class members. If brought and

prosecuted individually, the claims of each class member would necessarily

require proof of the same material and substantive facts, rely upon the same

remedial theories, and seek the same relief.

35.   The claims and remedial theories pursued by the named class

representative are sufficiently aligned with the interests of absent class

members to ensure that the individual claims of the class will be prosecuted

with diligence and care by the individual Plaintiff as class representatives.

36.   The class members are so numerous that joinder of all members is

impracticable.   It is believed and therefore averred that there are over 725

mortgages within each category of claims identified above and in each Count

of this Complaint.

37.   The claims of the Plaintiff are typical of the claims of each of the class

members, and the Plaintiff has no claim antagonistic to class members.   He is

aware that he cannot settle this action without Court approval.   He has and

will continue to vigorously pursue the class member claims.

38.   The Representative Plaintiff, JOHN W. OLIVER, III will fairly and

adequately protect the interests of the class members.   The Plaintiff is

committed to the vigorous representation of the class members and has retained competent counsel experienced in the prosecution of complex and class action litigation. Counsel have agreed to advance the costs of the litigation contingent upon the outcome.

39. AMERICAN has acted on grounds generally applicable to the class members, thereby justifying relief against Defendant, AMERICAN for the class members as whole.

40. A class action is superior to other methods for the fair and efficient adjudication of this controversy because prosecution of separate actions by mortgagors creates a high risk of inconsistent and varying adjudications, with inconsistent and varying results. Furthermore, as the damages suffered by many individual class members may be relatively small in relation to the costs of litigation, the expense and burden of individual litigation make it difficult, if not impossible, for class members to individually redress the wrongs done to them. Many, if not most, of the class members are unaware that claims exist against AMERICAN. There will be no unusual difficulty in the management of this class action.

41. The named individual Plaintiff is willing and prepared to serve the Court and proposed class in a representative capacity with all of the obligations and duties material thereto. The individual Plaintiff will fairly and adequately protect the interests of the class and have no interests adverse to, or which directly and irrevocably conflict with, the interests of the other class members.

42. The self-interest of the named class representative is co-extensive with and not antagonistic to those of the absent class members. The proposed representative will undertake to well and truly protect the interests of the absent class members.

43. Questions of fact and law common to the class that predominate include but are not limited to:

I.    Did AMERICAN breach their contractual obligations to the class members by having imposed or collected amounts that are not due and owing by contract or applicable law including interest, default related fees, costs, attorney's fees and charges?

II.    Did AMERICAN engage in unfair and/or deceptive acts and practices with respect to each Class member that includes one or more of the following:

a.    Imposing and collecting unnecessary and excessive fees and charges not authorized by the loan documents or by applicable law;

b.    Imposing and collecting excessive interest;

c.    Misleading or otherwise misinforming customers about the amounts properly due and owing;

d.    Engaging in conduct that violates state and federal consumer protection laws; and

8

     e.    Harassing or otherwise treating customers unfairly and without regard to obligations of good faith and fair dealing.

IV.    Did AMERICAN engage in unfair and/or deceptive acts and practices in violation of the New Jersey Consumer Fraud Act with respect to each Class member that includes one or more of the following:

     a.    Imposing and collecting unnecessary and excessive fees and charges not authorized by the loan documents or by applicable law;

     b.    Imposing and collecting excessive interest;

     c.    Misleading or otherwise misinforming customers about the amounts properly due and owing;

     d.    Engaging in conduct that violates state and federal consumer protection laws; and

     e.    Harassing or otherwise treating customers unfairly and without regard to obligations of good faith and fair dealing.

V.    Did AMERICAN represent to the Plaintiff that they are entitled to collect various loan charges that were not legally due and owing?

VI.    Did AMERICAN collect monies that are not due and owing under applicable law which resulted in unjust enrichment of the Defendant AMERICAN?

## COUNT ONE:

### BREACH OF CONTRACT - AMERICAN

44.     Plaintiff realleges and incorporate by reference all preceding allegations of law and fact as if they were set forth fully herein.

45.     Defendant's, AMERICAN loans are evidenced by standard form notes and mortgages, the relevant provisions of which are uniform.

46.     AMERICAN has imposed or collected amounts that are not due and owing by contract or applicable law including interest, default related fees, costs of suit, attorney's fees and other charges.

47.     AMERICAN failed to disclose in advance to the Plaintiff the amount of any fees or costs which may be charged to him in connection with his mortgage.

48.     AMERICAN has breached its contracts with Plaintiff and members of the class. Specifically, the note and mortgage only allow AMERICAN to be reimbursed for actual expenses incurred. The note and mortgage make no provision for AMERICAN to receive any money in excess of the amount actually incurred.

49.     Plaintiff and Class members are entitled to relief for breach of contract.

## COUNT II:

### NEGLIGENCE - AMERICAN

50.   Plaintiff realleges and incorporates by reference all preceding allegations of law and fact as if they were set forth fully herein.

51.     AMERICAN owed Plaintiff and other Class members a duty of care with respect to servicing their mortgage loans  since those loans were secured by an interest in each homeowners' family residence and that lack of care would result in overpayments causing great hardship to Plaintiff and members of the class.

52.     AMERICAN conduct with respect to Plaintiff and other Class members was far below applicable standards for mortgage loan servicing.

53.     AMERICAN  conduct was negligent with respect to Plaintiff and other Class members.

54.     As a direct and proximate result of the negligence listed above  Plaintiff and the other Class members have suffered damages and are entitled to relief for AMERICAN's negligence.


## COUNT III:

### BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING
### AMERICAN

55.     Plaintiff realleges and incorporates by reference all preceding allegations of law and fact as if they were set forth fully herein.

56.     New Jersey recognizes a duty of good faith and fair dealing with respect to conduct encompassed by contractual relations.

58.     AMERICAN's conduct as aforesaid breached said duty.

59.     Plaintiff and members of the Class are entitled to relief for AMERICAN's breach.

## COUNT IV: UNJUST ENRICHMENT

### AMERICAN

60.     Plaintiff realleges and incorporates by reference all preceding allegations of law and fact as if they were set forth fully herein.

61.     AMERICAN has engaged in unlawful collection activities.

62.     AMERICAN has collected monies that are not due and owing under applicable contract law, because the contract or other applicable law does not permit AMERICAN to collect such fees and charges.

63.     Said conduct sounds in equity under the common law of unjust enrichment, money had & received, and constructive trust.

64.     AMERICAN has been unjustly enriched by its conduct.

65.     Plaintiff and Class members have suffered loss by virtue of AMERICAN'S conduct.

67.     Plaintiff and members of the Class are entitled to relief for unjust enrichment.

### COUNT V:

## UNFAIR AND DECEPTIVE ASSESSMENT AND COLLECTION OF FEES

### AMERICAN

68.     Plaintiff incorporates by reference all the foregoing paragraphs.

69.     In the course and conduct of their loan servicing and collection, Defendant in numerous instances, has represented, expressly or by implication, that fees assessed and collected by AMERICAN were (a) allowed under, the mortgage contract and (b) permitted by law.

12

70.   On numerous occasions, the fees assessed and collected by AMERICAN were (a) not allowed under the mortgage contract or (b) not permitted by law. Nonetheless, AMERICAN improperly assessed and collected these fees.

71.   The actions of Defendant have caused and are likely to cause substantial injury to consumers. This injury is not reasonably avoidable by consumers and not outweighed by countervailing benefits to consumers or competition.

72.   The acts or practices of Defendant constitute unfair and deceptive acts or practices in or affecting commerce in violation of Section 5(a) of the Federal Trade Commission Act, 15 U.S.C. §45(a) which constitutes a violation of the New Jersey Consumer Fraud Act and are therefore actionable by the Plaintiff.

## COUNT VI:

## FAIR FORECLOSURE ACT
## AMERICAN

73.   The Plaintiff repeats each and every allegation of the previous paragraphs and incorporates them by reference herein as if they were set forth fully herein.

74.   N.J.S.A. 2A:50-57 (b)(3) prohibits the charging of attorneys fees and costs in excess of those allowed by the New Jersey court rules.

75.   The charges for costs and attorneys fees of the Defendant were in excess of the amount allowed pursuant to the statute and court rule R 4:42-9(a)(4).

13

76.     These actions constitute unconscionable business practices under the New Jersey Consumer Fraud Act which provides for a specific relief.

77.     The Plaintiff demand a return of the excess charges.


## COUNT VII:

## NEW JERSEY STATE COURT RULE
## AMERICAN

78.     The Plaintiff repeat each and every allegation of the previous count and incorporate them by reference herein.

79.     The Defendant's charges for costs and attorneys fees of the Defendant were in excess of the amount allowed by the New Jersey court rules including but not limited to R 4:42-9(a)(4) and R 4:42-10 (a).

80.     These actions constitute unconscionable business practices under the New Jersey Consumer Fraud Act which provides for specific relief.

81.     The Plaintiff request the return of the excess charges with interest.


## COUNT VIII:

## NEW JERSEY CONSUMER FRAUD ACT - AMERICAN


82.     The Plaintiff repeat each and every allegation of the previous counts and incorporates them by reference herein as if they were set forth fully herein.

83.     The Defendant, AMERICAN has charged the illegal and/or excessive charges as outlined previously. The previously outlined actions by the

14

Defendant, AMERICAN are violations of rules, regulations and statutes for
which the Defendant is strictly liable under the New Jersey Consumer Fraud
Act.

84.     The Plaintiff has suffered an ascertainable loss of at least $ 1751.82
calculated based on the overcharges as reflected between the two reinstatement
quotes as the other charges were not itemized it is likely there are other
charges as well.

85.     The actions of the Defendant constitute unconscionable business
practices in violation of the New Jersey Consumer Fraud Act. N.J.S.A. 56:8-2
et .seq.

### COUNT IX:

### TRUTH-IN-CONSUMER CONTRACT, WARRANTY
### AND NOTICE ACT - AMERICAN

86.     The Plaintiff repeat each and every allegation of the previous counts
and incorporates them by reference herein as if they were set forth fully
herein.

87.     The Defendant, AMERICAN's, notice included illegal and/or excessive
charges  on the loan; specifically by charging excessive costs of suit, excessive
attorneys fees, and illegal late charges as outlined previously.

88.     The notice which demanded such illegal payments is a violation of the
Truth-In-Consumer Contracts, Warranty and Notice Act. N.J.S.A. 56:12-14

89.     The Plaintiff has been injured as a direct and proximate result of the
Defendant's actions.

## COUNT IX

### Forfeiture of Interest

90.  The Plaintiff repeats each and every allegation of the previous counts and incorporates them by reference herein as if they were set forth fully herein.

91.  The Defendant has charged and received the illegal and/or excessive interest on the loan; specifically by collecting the contract rate of interest after the entry of the final judgment of foreclosure which requires the collection of the judgment interest rate.

92.  NJSA 31:1-3 provides that upon the collecting of illegal interest; all interest upon the loan is forfeited and only the principle may be collected.

93. The Plaintiff demands a return of all interest paid on the mortgage pursuant to NJSA 31:1-3.

WHEREFORE, the Plaintiff demands judgment against the Defendant for return of all interest paid on the loan, attorney's fees, and cost of suit.

## COUNT X:

### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

94.    Plaintiff incorporates by reference all the foregoing paragraphs as if they were set forth fully herein.

95.    AMERICAN is a debt collector as AMERICAN purchased the Plaintiff's loan after it was in default. The firm regularly engages in the collection of debt and meets the definition of a debt collector contained in 15 USC 1692(a)(6).

16

96.     Defendant AMERICAN has violated the Fair Debt Collection Practices Act 15

U.S.C. 1692 et seq (FDCPA) by their conduct, including, but not limited to:

    a)  attempting to collect amounts not permitted by law ( 15 U.S.C.

        § 1692f(1)) via its payoff letters listed as Exhibits "A" & "B";

    b)  using unfair and unconscionable collection methods (15 U.S.C.

        § 1692f);

    c)   Falsely representing the character, amount, or legal status of a debt, or

    any services rendered or compensation which may be lawfully received by a

    debt collector for collection of a debt, in violation of Section 807(2)(A) and (B)

    of the FDCPA, 15 U.S.C. § 1692e(2)(A) and (B);

97.     The acts and practices alleged also constitute unfair or deceptive acts or

practices which constitutes a violation of the New Jersey Consumer Fraud Act and

are therefore actionable by the Plaintiff against defendant, LaSalle independently of

the Fair Debt Collection Practices Act.


## COUNT XI

## LICENSED LENDERS ACT

98.  The Plaintiff repeats each and every allegation of the previous counts

and incorporates them by reference herein as if they were set forth fully herein.

99.     Option One Mortgage Corporation at the time the loan was made was a

lender licensed pursuant to the New Jersey Licensed Lenders Act.

100.     AMERICAN as the successor to Option One is subject to the rules and

regulations of the New Jersey Licensed Lenders Act.

101.  The Defendant has charged illegal and/or excessive charges  on the loan; specifically by charging excessive costs of suit, excessive attorneys fees, and illegal late charges as outlined previously.

102.  NJSA 17:11C-28(a) provides that upon the charging of any illegal charges; all interest and other charges upon the loan are forfeited and only the principle may be collected.

103.      The Plaintiff demands a return of all interest and other charges paid on the mortgage pursuant to NJSA 17:11C-28(a).

WHEREFORE, the Plaintiff demands judgment against the Defendant, AMERICAN for return of all interest paid on the loan, attorney's fees, and cost of suit.

## COUNT XII:

## JOHN DOE PARTIES

104.      In addition to the persons named as Defendant, there may be others whose names are unknown to the Plaintiff and/or after diligent inquiry has not been able to ascertain. They are made parties to this action under the designation of John Does.

105.    John Doe Servicer 1-100 are the unknown servicers of mortgages held by the Defendant AMERICAN.

106.    John Doe Law Firm 1-100 are the unknown law firms which have represented AMERICAN or any of its Servicers.

18

## PRAYER FOR RELIEF

Wherefore Plaintiff requests that this court certify a class and award:

1.      Actual, special, and general damages according to proof;

2.      Statutory damages and penalties;

3.      Restitution and disgorgement according to proof;

4.      Injunctive relief against Defendant AMERICAN to ensure uniform standards of servicing conduct towards all class members and to prevent future wrongful conduct;

5.      Prejudgment interest at the maximum legal rate;

6.      Punitive, exemplary and enhanced damages according to proof;

7.      Statutory punitive treble damages;

8.      An accounting;

9.      Declaratory Judgment as necessary to correct the wrongs inflicted on them;

10.     Litigation Expenses and Costs of the proceedings herein;

11.     Reasonable attorneys' fees; and

12.     All such other further relief as the Court deems just.

19

## DESIGNATION OF TRIAL COUNSEL

The undersigned, Roger C. Mattson, Esq., and Lewis G. Adler, Esq.

are designated as trial counsel.

## DEMAND FOR JURY TRIAL

PLEASE TAKE NOTICE that Plaintiff hereby demands a trial by jury as to

all issues of fact and/or law.

Dated:    1/2/09            /s/ Roger C. Mattson, Esquire
                           ROGER C. MATTSON, ESQ.
                           Attorney for Plaintiff

20

# Exhibit A



Submit Request
Search Request
View Fees



www.ahm

## Reinstatement Quote

Sep 11, 2008

Attention To : Nancy Cummins
Fax Number : 949-790-8515

Borrower Name : John Oliver iii
Loan Number : 0011444668

Property Address : 1122 Mullica Hill Rd,
Swedesboro, NJ 8062

Reinstatement Quote Good Through : 09/26/2008

| | | | | |
|---|---|---|---|---|
| 3 | Payments @$ 2,225.54 | : $ | 6,676.62 | |
| 2 | Payments @$ 2,305.88 | : $ | 4,611.76 | |
| 6 | Payments @$ 2,186.65 | : $ | 13,119.90 | |
| 1 | Payments @$ 2,055.02 | : $ | 2,055.02 | |
| | Borrower Interview | : $ | 65.00 | |
| | Foreclosure Attorney Fees | : $ | 1,935.00 | 3 4530 |
| | Foreclosure Costs | : $ | 1,518.00 | |
| | Property Inspections | : $ | 48.00 | |
| | Property Valuations | : $ | 190.00 | |
| | Accrued Late Charges | : $ | 1,004.16 | |
| | NSF Check Fees | : $ | 47.40 | |
| | Forecasted Late Charge | : $ | 79.99 | |
| | Unapplied Funds | : $ | (195.55) | |

TOTAL Servicer Reinstatement Amount : $  31,155.30

The amounts shown above are subject to change and may not reflect transactions that occur on or after th letter. AHMSI reserves the right to demand additional funds, prior to or after reinstatement of the loan to cu error or omission made in good faith, whether clerical, typographical, or otherwise.

All payments made pursuant to a reinstatement quote expiring on a Saturday, Sunday or federal holiday m received on the business day immediately preceding the expiration date in order to be credited timely. Del on a non-business day will not be accepted and may cause a shortage in the reinstatement amount.

Please remit the amount shown in the form of a money order or certified funds (cashier's check, bank che check) via overnight mail to::

AHMSI
Attn: Cash Management
4600 Regent Blvd, Suite 200
Irving, TX 75063

Should you have any questions regarding this matter, please contact AHMSI at the toll free number, 877-3 between the hours of 7:00 am CST to 9:00 pm CST Monday-Friday.

This is an attempt to collect a debt and any information obtained will be used for that purpose. This notice

# Exhibit B

# Phelan Hallinan & Schmieg, PC
400 Fellowship Road, Suite 100
Mt. Laurel, NJ 08054
856-813-5500
Fax: 856-813-5532

Representing Lenders in
Pennsylvania and New Jersey

September 26, 2008

Angelo Flaciano, Esq.
Fax: 856-845-3996

Re:    Phelan Hallinan & Schmieg, P.C. File No.: OPT-775
       Loan Number: 0011444866
       Mortgagor: JOHN W. OLIVER, III
       Property: 1122 MULLICA HILL ROAD SWEDESBORO NEW JERSEY 08062

Dear Mortgagor:

This letter is in response to your request for a reinstatement amount. As of September 26, 2008 the reinstatement amount owed is $29,403.48. However, the amount that you owe, including legal fees and costs, may increase between the date of this letter and the date that you reinstate your loan. This is because additional steps may occur in the foreclosure process and additional amounts may become due. If you have previously received a discharge in a Chapter 7 bankruptcy, this correspondence is not and should not be construed to be, an attempt to collect a debt from you personally, but is only being provided for informational purposes pursuant to a request made by you or your agent to better benefit you.
It is our understanding that you intend to reinstate the loan at a future date. If you pay by 9/30/08, we estimate that the reinstatement amount will be as follows:

| | |
|---|---:|
| Monthly Payments Due (including payment due on 9/1/08) | $ 26,463.30 |
| Late Charges | $ 1,084.15 |
| NSF Fee | $47.40 |
| Property Inspections/BPO | $ 303.00 |
| Legal Fees and Costs through September 26, 2008 | $ 1,701.18 |
| Anticipated Additional Legal Fees and Costs through 9/30/08 | $ 0.00 |
| Unapplied Credit | $ -195.55 |
| Total Estimated Reinstatement Amount Due as of 9/30/08 | $ 29,403.48 |

Please note that this estimated reinstatement quote expires on 9/30/08.

If you want to reinstate your loan after 9/30/08, you must contact us for a new reinstatement amount. Please be advised that the reinstatement amount is subject to final verification by the Note holder. You will be responsible to reimburse the Note holder if it pays other taxes, insurance or other miscellaneous expenses allowed by law.

If you are moving or no longer live at the property, please provide us with a new address. If we receive legal fees and costs in excess of the amount you owe, they will be returned to you by mail.

There may be other options available to help you avoid foreclosure. You may contact your lender to discuss these options.

We will not accept personal checks. Please make your attorney trust check, title company check, certified check, bank order or money order payable to American Home Mortgage Servicing Inc. and mail or deliver the check directly to Phelan Hallinan & Schmieg, PC, 400 Fellowship Road, Suite 100, Mt. Laurel, NJ 08054, so that we receive it no later then 5:00 PM on 9/30/08.

Very truly yours,

Phelan Hallinan & Schmieg, PC
Jessica Hansbury

PLEASE BE ADVISED THAT THIS OFFICE IS ATTEMPTING TO COLLECT A DEBT AND THAT ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

# EXHIBIT B

```
NOTS 0011444866          CONSOLIDATED NOTES LOG          01/06/09  11:38:38
JW OLIVER I     L:R F:R B:  R:          DUE 01/01/09   TYPE CONV. RES.   ARM
     ANA Y ARM Y ASM Y BLN Y BNK Y CCN Y COL Y ELC Y FOR Y HAZ Y LMT Y OCP
     MIP Y PIF Y PMT Y REO Y SER Y TAX Y TSK Y DATE SELECT: MMDDYY  PRINT: _
-------------------------------* PF8 FOR MORE *--------------------------------
FOR 091508 WEB S COMPLETED    ID- 1840096.
FOR 091508 WEB USER HAS COMPLETED THE  REINSTATEMENTREQUESTED DAT
               A FORM WITH THE FOLLOWING ENTRIES:  :   :   : 9/30
               /2008  :   :
FOR 091508 WEB SYSTEM UPDATED FOR THE FOLLOWING EVENT: USER HAS C
               REATED A PROCESS-LEVEL ISSUE FOR THIS LOAN.ISSUE T
               YPE: REINSTATEMENT QUOTE REQUEST. ISSUE COMMENTS:
               EXTERNAL USE    PLEASE PROVIDE OUR OFFICE WITH A R
               EINSTATEMENT FIGURE G/T                     ALONG
               WITH ANY BREAKDOWNS OF CORPORATE ADVANCES SO WE CA
               N PROCESS FASTER.          OUTSTANDING FEES:  2
               60.00   OUTSTANDING COSTS:  42.00      STATUS: ACT
               IVE
SER 091508 NL1 FAXED REINSTATEMENT QUOTE TO ATTY ANGELO FALCIANI
               OFFICE ATTN: PEGGY.
FOR 091108 WEB 9/11/2008 1:41:06 PM CT: PATTI KELLY, FIDELITY FEE
               S AND COSTS. - A FEES AND COSTS REQUEST HAS BEEN C
```

# EXHIBIT C

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-4001-07T1

GLENN BOOTHBY,

    Plaintiff-Appellant,

    v.

BETTE MELENDEZ,

    Defendant-Respondent.

―――――――――――――――――――――

       Argued February 9, 2009  -  Decided March 11, 2009

       Before Judges Sabatino and Simonelli.

       On appeal from the Superior Court of New
       Jersey, Law Division, Union County, Docket
       No. L-1066-07.

       John A. Patti argued the cause for appellant
       (Law Offices of John A. Patti, attorneys; Mr.
       Patti and Laura M. D'Orsi, on the brief).

       Raymond R. Wiss argued the cause for
       respondent (Wiss & Bouregy, P.C., attorneys;
       Mr. Wiss, of counsel; Thomas K. Bouregy, Jr.
       and Melissa Kanbayashi, on the brief).

PER CURIAM

    Applying principles of the entire controversy doctrine, the

Law Division dismissed the complaint of Glenn Boothby in the

present action against Bette Melendez (the "second lawsuit").

The dismissal occurred after Melendez had obtained a judgment

against Boothby in prior litigation (the "first lawsuit"). Because we are satisfied that the trial court did not abuse its discretion or misapply the law in terminating the second lawsuit, we affirm.

Here are the factual and procedural matters relevant to our consideration of the issues. The parties once had a romantic relationship, during which time Boothby cohabitated with Melendez at her residence. The house was solely titled in Melendez's name. She obtained mortgage loans on the house to help finance Boothby's business ventures, acting as the sole named borrower. Eventually the couple separated in February 2005, and Boothby moved out, leaving behind several personal items. Boothby also agreed to make monthly payments to Melendez on the mortgage loans.

When Boothby defaulted on his agreed-upon payments, Melendez filed a complaint against him in the Law Division in August 2005. In that first lawsuit, Melendez sought Boothby's payment of the past due mortgage installments. She also alleged that Boothby owed her other financial obligations, including reimbursement for late penalties charged on the mortgages, the return of monies she loaned to him for his business expenses and taxes, and a release from her co-guaranty of a lease for his business. Boothby filed an answer denying that he owed anything

2

to Melendez.  He also asserted various affirmative defenses.  He did not, however, assert a defense of setoff, nor did he include in his pleading any counterclaim.  As part of his responsive pleading, Boothby included a certification pursuant to <u>Rule</u> 4:5-1, attesting in part that "no other action or arbitration proceeding is contemplated."

While the first lawsuit was pending, Boothby asserted on at least four occasions, either directly or through his attorney, that he had left behind valuable personal property at the residence and that Melendez was responsible to him for those items.  Specifically, in a letter to Melendez's attorney dated January 30, 2006, Boothby's counsel alleged that Melendez had improperly placed for auction a collection of Italian glass and certain oil paintings belonging to him.  The letter threatened civil claims against Melendez for the alleged conversion and also stated that Boothby had already filed a report of stolen property with the local police department.  Thereafter, in another letter to Melendez dated March 29, 2006, Boothby alleged that she had wrongfully sold his possessions that he had left behind in the house and that he intended to amend his pleadings in the first lawsuit to include these "antics . . . in a counterclaim."  In a third letter, dated July 13, 2006, Boothby reiterated his intent to file such a counterclaim and that he

A-4001-07T1

also would "preserve [his ability to assert the claims] by filing a separate complaint."

Despite his ongoing belief that Melendez had converted his property, Boothby did not promptly seek leave of court to amend his pleadings in the first lawsuit to add a counterclaim for relief.   Instead, Boothby waited until the eve of trial.   He filed a motion to amend his answer, returnable on short notice for Friday, August 4, 2006, three days prior to the trial date of Monday, August 7, 2006.   In his supporting certification, Boothby attested that "[i]n order to have all claims arising out of the same proceeding to be addressed, the defendant [Boothby] is requesting that the answer be amended" to include the counterclaim.   The certification further acknowledged that "[i]n hopes of resolving the matters in the entirety, we have restrained ourselves [until now] from filing this complaint."

The trial court denied Boothby's belated motion for leave to amend and issued a corresponding order on August 18, 2006. Notably, Boothby did not seek to have the court revise the form of order to reserve his potential counterclaims for a subsequent action.

The first lawsuit was adjudicated in a bench trial before Judge Malone.   After considering the parties' testimony and other proofs, Judge Malone found that the two parties had

essentially acted as business partners and that the joint debts
they incurred should be shared accordingly.    In his written
decision,    Judge Malone    found    that    the    parties'    joint
obligations, including loan proceeds, penalties and tax liens,
totaled $207,921.31, and that Boothby's share was $107,960.65.

The Law Division entered final judgment against Boothby in
that amount on November 30, 2006.   Neither party appealed that
judgment.   Nor did Boothby appeal the court's order of August
18, 2006, which had denied him leave to assert a counterclaim.

Seven months after the first lawsuit was tried, Boothby
brought the second lawsuit.    He filed a complaint against
Melendez in the Law Division on March 23, 2007, alleging that
after the parties had stopped living together, she had
wrongfully sold various "antiques, antiquities, works of art and
collectibles" that belonged to him.   In that regard, the
complaint referenced Boothby's police report, which had
previously been mentioned in his January 30, 2006 letter to
Melendez.   The complaint sought redress based upon legal
theories of conversion and deceit and also sought punitive
damages.

As discovery proceeded in the second lawsuit, Boothby took
the deposition of Melendez.    In her deposition testimony,

A-4001-07T1

Melendez confirmed that she had sold certain items that Boothby had left behind at the house.

Having provided Boothby with the opportunity to depose her, Melendez then moved to dismiss the second lawsuit. Her motion was predicated upon Rule 4:30A and the entire controversy doctrine. She argued that Boothby should have included his affirmative claims against her through a timely counterclaim in the first lawsuit. She also informed the court that Boothby has not paid any of the amounts due under the judgment, suggesting that it is inequitable for the second lawsuit, in which Boothby hopes to obtain a larger offsetting recovery against her, to proceed.

After hearing oral argument, Judge Lisa Chrystal granted Melendez's motion. The judge agreed that the second lawsuit—under equitable principles—should not proceed because Boothby was clearly aware during the pendency of the first lawsuit that he had offsetting claims against Melendez but held back on asserting those claims until filing his motion to amend on the brink of trial. The judge also found that the two successive lawsuits manifestly "derive from a single transaction or related series of transactions."

Boothby now appeals, contending that the trial court abused its discretion in "dismissing a claim that was never adjudicated

6                                                        A-4001-07T1

in any other hearing." He contends that the court erred in applying the entire controversy doctrine to this matter, and in its reliance upon case law involving the doctrine.

After carefully considering the points raised on appeal, we affirm the dismissal of the second lawsuit, substantially for the cogent reasons expressed in Judge Chrystal's letter opinion of April 11, 2008. We add several comments.

The entire controversy doctrine promotes the policies of mandatory joinder and claim preclusion associated with the more widely known doctrine of res judicata. See Pressler, Current N.J. Court Rules, comment 2 on R. 4:30A (2009); see, e.g., McNeil v. Legislative Apportionment Comm'n, 177 N.J. 364, 395 (2003) ("The concept that a party is required to bring all possible claims in one proceeding is embodied in the closely linked concepts of res judicata and the entire controversy doctrine."), cert. denied, 540 U.S. 1107, 124 S. Ct. 1068, 157 L. Ed. 2d 893 (2004); In re Estate of Gabrellian, 372 N.J. Super. 432 (App. Div. 2004) (holding the doctrine of res judicata barred a second probate action when all claims could and should have been brought in the first action because the facts supporting both actions were the same), certif. denied, 182 N.J. 430 (2005); see also Long v. Lewis, 318 N.J. Super. 449, 459 (App. Div. 1999) ("The claim preclusion aspect of the

entire controversy doctrine is essentially res judicata by another name.").

Res judicata, or claim preclusion, is a long-established doctrine that restricts a litigant's ability to bring claims in a subsequent civil action that were or could have been adjudicated in an earlier lawsuit involving the same parties. Lubliner v. Bd. Of Alcoholic Bev. Control, 33 N.J. 428, 435 (1960). The doctrine "rests upon policy considerations which seek to guard the individual against vexatious repetitious litigation and the public against the serious burdens which such litigation imposes upon the community." Ibid. For these reasons, the original judgment carries with it preclusive effects. See also Restatement (Second) of Judgments Ch. 1 Scope at 1 (1982).

The entire controversy doctrine requires litigants in a civil action to raise all affirmative claims arising from a single controversy that each party might have against another party, including counterclaims and cross-claims. R. 4:30A.[1] It

---

[1] R. 4:30A, entitled "Entire Controversy Doctrine," states as follows:

> Non-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine, except as otherwise provided by R. 4:64-5 (foreclosure actions)

(continued)

8                                                       A-4001-07T1

is a preclusionary device, intended to prevent fractionalized litigation by requiring the assertion of all claims arising from a single controversy in a single action. Prevratil v. Mohr, 145 N.J. 180, 190 (1996). The reasons behind the doctrine are threefold: "(1) the need for complete and final disposition through the avoidance of piecemeal decisions; (2) fairness to parties to the action and those with a material interest in the action; and (3) efficiency and the avoidance of waste and the reduction of delay." DiTrolio v. Antiles, 142 N.J. 253, 267 (1995) (citing Cogdell v. Hospital Center, 116 N.J. 7, 15 (1989)).

The doctrine applies to successive suits with related claims. Id. at 268. "In determining whether successive claims constitute one controversy for purposes of the doctrine, the central consideration is whether the claims against the different parties arise from related facts or the same transaction or series of transactions." Id. at 267. It is the factual context "giving rise to the controversy itself, rather than a commonality of claims, issues or parties, that triggers the requirement of joinder to create a cohesive and complete

_____

(continued)
            and R. 4:67-4(a) (leave required for
            counterclaims or cross-claims in summary
            actions).

A-4001-07T1

litigation."  <u>Mystic Isle Dev. Corp. v. Perskie & Nehmad</u>, 142 <u>N.J.</u> 310, 323 (1995); <u>see also</u> <u>DiTrolio</u>, <u>supra</u>, 142 <u>N.J.</u> at 267-68 ("It is the core set of facts that provides the link between distinct claims against the same or different parties and triggers the requirement that they be determined in one proceeding.").

We agree with Judge Chrystal that the claims which Boothby has attempted to litigate in this second lawsuit derive, at a minimum, from a "related series of transactions."  That factual inter-connectedness was admitted by Boothby in his August 2006 certification, in which he represented to the court that the counterclaims he wished to plead were "arising out of the same proceeding," which he raised "in the hopes of resolving the matters in their entirety."

Although Boothby now attempts to compartmentalize the first lawsuit as, in essence, only a mortgage loan case, the parties' domestic relationship and their intertwined financial dealings that were litigated in that action were much broader in their scope.  That is reflected in Judge Malone's written decision, in which he traced in detail the parties' relationship and their mutual financial endeavors and commitments.  Boothby's offsetting claims regarding the personal items that he left

behind in the shared residence should have been timely pleaded and included within the issues presented at the first trial.

We reject Boothby's assertion that he was not truly aware of Melendez's conversion until he took her deposition in the second lawsuit. That assertion of ignorance is belied by his filing of a police report in 2006 and his repeated correspondence during the pendency of the first lawsuit threatening such a counterclaim. To be sure, Melendez's deposition answers may have provided further corroboration of Boothby's conversion theory and further quantification of the associated damages, but that does not excuse Boothby for not filing a timely counterclaim earlier when he had a reasonable basis to assert such claims. There is also no suggestion before us that Boothby was prevented from seeking her deposition during the discovery period in the first action.

Boothby argues that it is inequitable to dismiss his affirmative claims because they were not specifically adjudicated in the first lawsuit. We disagree. Boothby had more than ample opportunity to assert those counterclaims in a timely manner in the first lawsuit. His decision to wait until three days before the trial to seek leave of court to add a counterclaim, after threatening his adversary for at least seven months that he would do so, suggests that he may well have been

A-4001-07T1

engaged in a tactical effort to obtain leverage over Melendez on the verge of trial. There was no injustice in the court denying leave to amend the pleadings at that eleventh hour. See R. 4:9-1; Morales v. Academy of Acquatic Sci., 302 N.J. Super. 50, 56 (App. Div. 1997) (disfavoring motions for leave to amend filed on the eve of trial).

We reject Boothby's contention that his belated motion for leave to amend his pleadings in the first lawsuit sufficed to preserve his affirmative claims for future litigation. The potential entire controversy implications of such a denial are not per se inequitable, particularly where the motion for leave is made so late as to prejudice the opposing party. Wm. Blanchard Co. v. Beach Concrete, Inc., 150 N.J. Super. 277, 299 (App. Div.), certif. denied, 75 N.J. 528 (1977). Given the factual elements of Boothby's offsetting claims, the court would invariably have had to adjourn the first trial and permit additional discovery to allow Melendez a fair opportunity to oppose those late claims.

Moreover, Boothby did not appeal the denial of his motion for leave to amend nor did he request the court to specify in its dismissal order that his potential counterclaims were reserved. See, e.g., Dilorio v. Structural Stone and Brick Co., 368 N.J. Super. 134, 139 (confirming the court's authority to

reserve such claims against an existing party); see also Pressler, supra, comment 3.4 on Rule 4:30A (noting a litigant's right to request judicial reservation of an unpleaded claim and thereby avoid entire controversy problems). Had the trial court denied a request to reserve the claims, Boothby could have appealed the adverse ruling in the first litigation. Instead, the forty-five days for appeal lapsed and the court's disposition became final.

Finally, we consider Boothby's assertion that Melendez acted unfairly and prejudiced him in not bringing her motion to dismiss sooner. Although we agree that Melendez preferably should have filed this case-dispositive motion before discovery was conducted in the second action, we discern no substantial prejudice to Boothby resulting from that delay. The motion was not out of time, and, moreover, it advanced the court's independent interest in discouraging piecemeal adjudications.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-4001-07T1

rldiclem

# EXHIBIT D

NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| DOROTHY RHUE ALLEN, | : | |
| | : | Civil No. 08-2240 (AET) |
| Plaintiff, | : | **MEMORANDUM & ORDER** |
| v. | : | |
| LASALLE BANK, N.A.; CENLAR FEDERAL SAVINGS BANK, FSB; FEIN, SUCH, KAHN AND SHEPARD, PC, | : | |
| Defendants. | : | |

THOMPSON, U.S.D.J.

      This matter is before the Court upon Defendants' Motions to Dismiss, [15], [19] and [20]. The Court has decided these Motions based upon the submissions of the parties and without oral argument pursuant to Fed. R. Civ. P. 78.  For the reasons set forth below, Defendants' Motions are granted.

**I.      Background**

      **A.      State Court Action**

      On May 7, 2007, Defendant law firm Fein, Such, Kahn & Shepard, PC ("Fein") brought a mortgage foreclosure action in the Superior Court of New Jersey, General Equity against Plaintiff, Dorothy Rhue Allen, on behalf of Plaintiff's mortgage lender, Defendant LaSalle Bank, N.A. ("LaSalle").  (Compl. ¶ 9.)[1]

---

      [1] Defendant LaSalle's alleged role in the case is unclear to the Court.  The Complaint alleges that Fein filed the foreclosure action on LaSalle's behalf on May 7, 2007 (Compl. ¶ 9),

After the foreclosure action was filed, Plaintiff's attorney requested a payoff statement from Fein. (Compl. ¶ 13.) On June 7, 2007, Fein sent Plaintiff's attorney a letter containing a payoff quote of $3,425.31 for the principal balance due on the loan as well as other charges, to be paid to Defendant Cenlar Federal Savings Bank ("Cenlar"), the "servicer" of Plaintiff's loan, and $2,372.14, to be paid directly to Fein for attorneys fees and other costs. (Compl. ¶¶ 10, 16.) Also on June 7, Fein sent a second letter detailing the fees and costs that made up the $2,372.14 to be paid to Fein. (Compl. ¶ 16.)

In response, Plaintiff filed an Answer, Counterclaim and Third Party Complaint, alleging that Fein's payoff letters violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. (the "FDCPA") and gave rise to several state law and common law claims. Defendants moved to dismiss the Counterclaim and Third Party Complaint, but before the state court reached these motions on the merits, LaSalle agreed to release the mortgage and dismiss the foreclosure action. The Superior Court, General Equity then dismissed Plaintiff's Counterclaim and Third Party Complaint without prejudice on March 20, 2008 and directed that any new pleadings be filed in the Superior Court, Law Division because the underlying foreclosure action had been dismissed.

### B.   The Complaint

Instead of proceeding further in state court, Plaintiff filed the instant putative class action in this Court on May 7, 2008, again asserting claims under the FDCPA as well as several state law and common law claims.

Counts I and II of the Complaint assert the FDCPA claims against Fein and LaSalle respectively. In support of her FDCPA claims against Fein, Plaintiff alleges that the fees and

---

but the Complaint also states that LaSalle did not take assignment of the mortgage until June 12, 2007. (Compl. ¶ 11.) While at least one of LaSalle's arguments in favor of dismissal turns on this discrepancy, the Court will not address it because the Complaint will be dismissed on other grounds.

costs charged in the payoff letter exceeded those allowable by law and those actually incurred by

Fein, in violation of §§ 1692e(2)(B) and 1692f(1).  (Compl. ¶¶ 13, 33.)  Specifically, Plaintiff

alleges that the attorneys fees exceeded the amount allowable under New Jersey Court Rule 4:42-

9, the "cost of suit" exceeded the amount allowed under New Jersey Court Rule 4:42-10 and the

recording fee and process service fee exceeded the fees Fein actually incurred in prosecuting the

foreclosure action.  (Compl. ¶ 13.)  Plaintiff also alleges more generally that Fein used "unfair

and unconscionable collection methods" (Compl. ¶ 33) and "engaged in unfair and/or deceptive

acts and practices" by "imposing and collecting unnecessary and excessive fees and charges not

authorized by the loan documents or by applicable law; imposing and collecting excessive

interest; misleading or otherwise misinforming mortgagors about the amounts properly due and

owing; engaging in conduct that violates state and federal consumer protection laws; and

harassing or otherwise treating mortgagors unfairly and without regard to obligations of good

faith and fair dealing."  (Compl. ¶ 36.)  Although the Complaint does not specify which sections

of the FDCPA Fein violated by this conduct, the Court construes the Complaint here to be

alleging violations of the "general application" provisions of § 1692d (harassing, oppressive and

abusive conduct), § 1692e (use of false, deceptive or misleading representations) and § 1692f

(use of unfair or unconscionable means), as well as repeating its allegation under § 1692f(1) and

alleging a violation of § 1692e(2)(A) (false representation of the character, amount or legal status

of any debt).

     The Complaint's FDCPA allegations against LaSalle in Count II are identical to those

against Fein in Count I except Count II omits the general allegations under §§ 1692d, 1692e and

1692f and adds an explicit allegation that LaSalle violated § 1692e(2)(A) by "falsely representing

the character, amount or legal status of a debt ...."  (Compl. ¶ 40.)

     Counts III through XI of the Complaint assert the state law and common law claims

against all three Defendants.  However, because the Court will dismiss the FDCPA claims against both Fein and LaSalle, the Court will not address the substance of these supplemental state law claims.

Defendants each now move pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted.

## II.    Analysis

### A.    Motion to Dismiss Standard

In deciding a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the Court must "accept the complaint's allegations as true, read those allegations in the light most favorable to the plaintiff, and determine whether a reasonable reading indicates that relief may be warranted."  Umland v. PLANCO Fin. Servs., Inc., 542 F.3d 59, 64 (3d Cir. 2008) (affirming the Third Circuit's formulation of the Rule 12(b)(6) standard post-Twombley).

Although Plaintiff brought this action as a putative class action, no class has yet been certified, and until a class is certified, the action is one between the named Plaintiff and the Defendants only.  Therefore, in applying the above standard, the Court will determine whether the Complaint's allegations are sufficient to state a claim with respect to the named Plaintiffs themselves, not any unnamed putative class members.  See Lum v. Bank of Am., 361 F.3d 217, 225-26 (3d Cir. 2004); Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 659 (3d Cir. 1998), abrogation on other grounds recognized by, Forbes v. Eagleson, 228 F.3d 471 (3d Cir. 2000).[2]

_____

[2] The Court notes that even though Rule 23(c)(1)(A) directs the Court to decide whether to certify an action as a class action at "an early practicable time," dispositive motions, including

**B.     FDCPA Claims**

1.     15 U.S.C. §§ 1692d, 1692e & 1692f

The FDCPA prohibits debt collectors from engaging in various practices in connection

with collecting consumer debts.  As alleged by Plaintiff here, "a debt collector may not engage in

any conduct the natural consequence of which is to harass, oppress, or abuse any person in

connection with the collection of a debt," § 1692d, or "use any false, deceptive, or misleading

representation or means in connection with the collection of a debt," § 1692e, or "use unfair or

unconscionable means to collect or attempt to collect any debt."  § 1692f.  "Without limiting the

general application" of these three provisions, the FDCPA lists certain examples of prohibited

conduct, including, as alleged by Plaintiff here, "[t]he false representation of the character,

amount or legal status of any debt, or any services rendered or compensation which may be

lawfully received by any debt collector for the collection of a debt" § 1692e(2)(A)-(B), and "[t]he

collection of any amount (including any interest, fee, charge, or expense incidental to the

principal obligation) unless such amount is expressly authorized by the agreement creating the

debt or permitted by law."  § 1692f(1).

The purpose of these provisions is, as stated in the FDCPA itself, to "eliminate abusive

debt collection practices by debt collectors," § 1692(e), that is, to "protect all consumers, the

gullible as well as the shrewd, the trusting as well as the suspicious, from abusive debt collection

_____

motions to dismiss under Rule 12(b)(6), may be properly decided before a decision has been
reached regarding class certification.  See Estate of Gleiberman v. Hartford Life Ins. Co., 94 Fed.
Appx. 944, 948 (3d Cir. 2004); Zimmerman v. HBO Affiliate Group, 834 F.2d 1163, 1169-70
(3d Cir. 1987); Manual for Complex Litigation (Fourth) § 21.11 (2004).  However, because no
class has yet been certified, the Court's decision is binding only on the named plaintiff.  Manual
for Complex Litigation (Fourth) § 21.11; 5 Moore's Federal Practice § 23.81 (2008).

practices." Brown v. Card Serv. Ctr., 464 F.3d 450, 454 (3d Cir. 2006).

       2.     Fein's Motion to Dismiss

Fein argues that the letters it sent are not actionable under the FDCPA because they were sent only to Plaintiff's attorney and not to Plaintiff herself. Fein urges that given the purposes of the FDCPA, to protect "naive consumers," Brown, 464 F.3d at 454, statements made directly to a consumer's attorney should not be actionable under the FDCPA because the consumer's attorney will obviate the need for the FDCPA's protections. Consumers otherwise unable to protect themselves from abusive, misleading and unfair debt collectors, are adequately protected when their attorneys stand interposed between them and the debt collector.

Fein primarily relies on Guerro v. RJM Acquisitions, LLC, 499 F.3d 926 (9th Cir. 2007), for support, noting that the Third Circuit has not addressed this issue. In Guerro, the Ninth Circuit found that the FDCPA exhibited "a congressional understanding that, when it comes to debt collection matters, lawyers and their debtor clients will be treated differently" and concluded that because "[a]ttorneys possess exactly the degree of sophistication and legal wherewithal that individual debtors do not," "communications directed only to a debtor's attorney, and unaccompanied by any threat to contact the debtor, are not actionable under the Act." Id. at 935-39. Fein urges that absent Third Circuit precedent, this Court should adopt the Ninth Circuit's holding in Guerro.

       a.     Statements Made Only To Attorneys

While neither the Third Circuit nor any district court in this district has addressed the question of whether statements made only to a debtor's attorney are actionable under the FDCPA, four other Courts of Appeal have considered the question and come to divergent

conclusions.

Both the Second and Ninth Circuits have concluded that given the purposes of the FDCPA, statements made only to a debtor's attorney are not actionable per se. <u>Guerro</u>, 499 F.3d 926; <u>Kropelnicki v. Siegel</u>, 290 F.3d 118, 127-28 (2d Cir. 2002). On the other end of the spectrum, the Fourth Circuit, noting that "communication" is defined broadly under the FDCPA as "conveying of information regarding a debt directly or indirectly," § 1692a(2), holds that communications with a debtor's attorney are always to be treated as indirect communications with the debtor and are therefore actionable. <u>Sayyed v. Wolpoff & Abramson</u>, 485 F.3d 226, 232-33 (4th Cir. 2007).[3]

Recognizing this split in authority between the Ninth and Fourth Circuits, the Seventh Circuit has rejected the per se approaches of both and found instead that courts must use a different standard when considering statements made only to a debtor's attorney as opposed to statements made directly to a debtor. <u>Evory v. RJM Acquisitions Funding, LLC</u>, 505 F.3d 769 (7th Cir. 2007) (citing <u>Guerro</u> and <u>Sayyed</u>).

Specifically addressing §§ 1692d, 1692e and 1692f, the Seventh Circuit noted that the FDCPA does not exclude any type of person from the scope of these provisions, but rather, prohibits "harass[ing], oppress[ing], or abus[ing] *any person*," § 1692d, "*any* false, deceptive, or misleading representation," § 1692e, and "unfair or unconscionable means." § 1692f. <u>Evory</u>, 505 F.3d at 773. That is, "[t]hese sections do not designate any class of persons, such as lawyers,

---

[3] Although the provisions of the FDCPA allegedly violated here, and in <u>Sayyed</u>, are not limited to "communications" as defined in the statute, the Fourth Circuit nonetheless drew on the statute's broad definition of "communications" as support for its interpretation of the FDCPA's reach generally.

who can be abused, misled, etc., by debt collectors with impunity." Id.   However, the Evory

court likewise rejected the Fourth Circuit's holding that statements made to a debtor's attorney

should always be treated as if they were made directly to the debtor.  Instead, Evory recognized

that in the usual case, courts measure statements made to a debtor from the perspective of "a

person of modest education and limited commercial savvy" in order to effect the purpose of the

FDCPA to protect unsophisticated consumers.  Id. at 774.  But, since "a lawyer is less likely to be

deceived, intimidated, [or] harassed," the standard under which a court must evaluate statements

made only to a debtor's *attorney* is whether a competent lawyer would likely be mislead.  Id. at

774-75.[4]

    This Court is persuaded by the reasoning of the Seventh Circuit.  First, the Court agrees

with the Seventh Circuit's conclusion that the language of §§ 1692d, 1692e and 1692f does not

support per se immunity for statements made to attorneys.  Second, while the Third Circuit has

not explicitly addressed the treatment of statements made only to a debtor's attorney, the

approach of the Seventh Circuit is most in line with the Third Circuit's analysis of FDCPA

claims.  In the Third Circuit, as in the Seventh Circuit, "lender-debtor communications

---

    [4] In Heintz v. Jenkins, 514 U.S. 291 (1995), the Supreme Court addressed "whether the
term 'debt collector' in the [FDCPA] applies to a lawyer who 'regularly,' *through litigation*, tries
to collect consumer debts."  Id. at 292.  The Court held that such lawyers are included within the
FDCPA's definition of "debt collector" and therefore affirmed the reversal of the district court's
dismissal of the complaint.  However, the communication at issue in Heintz happened to have
been not only sent *by* a lawyer, but also *to* a lawyer, that is, debtor's lawyer.  Noting this, the
Fourth Circuit in Sayyed cited Heintz as support for its position that statements made to a
debtor's attorney are actionable under the FDCPA.  Sayyed, 485 F.3d at 233.  This Court is not
persuaded by the Fourth Circuit's interpretation of Heintz and finds Heintz to be inapposite
because it is clear from the Supreme Court's decision that this issue was not raised before the
Court, let alone decided.  See Guerro, 499 F.3d at 937-38 (reading Heintz as not addressing this
issue).

potentially giving rise to claims under the FDCPA ... [are] analyzed from the perspective of the

least sophisticated debtor." Brown, 464 F.3d at 454.[5] The Third Circuit adopted this "least

sophisticated debtor" standard "in order to effectuate the basic purpose of the FDCPA: to protect

all consumers ... [including] the gullible." Rosenau v. Unifund Corp., 539 F.3d 218, 221 (3d Cir.

2008) (internal quotations, alterations and citations omitted). As a consequence of this

reasoning, and as the Seventh Circuit concluded, where a consumer's attorney is interposed

between the debt collector and the debtor, the Court need not use such a low standard to

determine whether a statement is, for example, misleading because even if the statement may

have been misleading to the least sophisticated consumer, the consumer will only be exposed to

the statement as filtered through the attorney. See Brown, 464 F.3d at 453 (reflecting the Third

Circuit's understanding that statements that are deceptive to those "less experienced" may very

well "be obvious to specialists or the particularly sophisticated."). Therefore, the Court will

evaluate statements made only to a debtor's attorney from the perspective of the competent

attorney, not the least sophisticated consumer. [6]

---

[5] The Third and Seventh Circuits do not agree on the phrasing of this lowered standard,
Brown, 464 F.3d at 454 ("least sophisticated debtor"); Evory, 505 F.3d at 774 ("not ... least
intelligent consumer" but instead "a person of modest education and limited commercial savvy"),
but this minor difference is not important for this analysis.

[6] The Third Circuit has thus far only applied the "least sophisticated debtor" standard to
claims under § 1692e, see Brown, 464 F.3d at 453-54, but other courts have applied the same or
similar low standard to claims under §§ 1692d and 1692f. See Jeter v. Credit Bureau, Inc., 760
F.2d 1168, 1179 (1985) (applying the least sophisticated debtor standard to a claim under §
1692d) (cited as such an example in Brown, 464 F.3d at 454 n.2); Wade v. Regional Credit
Ass'n, 87 F.3d 1098, 1100 (9th Cir. 1996) (applying the least sophisticated debtor standard to a
claim under § 1692f). Further, the Court sees no reason to apply different standards to §§ 1692d
and 1692f as opposed to § 1692e, given the Third Circuit's general statement of the purpose of
the FDCPA. Therefore, pursuant to the reasoning above, the Court will apply the competent
attorney standard to Plaintiff's claims under all three sections, §§ 1692d, 1692e and 1692f. See

Here, Plaintiff does not dispute that the two letters that allegedly violated the FDCPA were sent directly, and only, to the attorney representing her in the state foreclosure action, (Pl.'s Opp'n 8-9), and the Complaint and the letters themselves support that conclusion.[7]  (See Compl. ¶ 13 ("After the Plaintiff was served with the foreclosure complaint, her attorney requested a payoff statement of the mortgage."); Decl. of Daniel C. Green, Ex. A [docket # 16] (letter addressed to "Roger [Mattson]").)[8]  Therefore the Court will evaluate the statements in the letters from the perspective of a competent attorney representing a client in a foreclosure action.

b.   Fein's Statements

Plaintiff's FDCPA allegations are properly summarized as follows: Fein's payoff letters (1) charged costs and attorneys fees in excess of that allowed under New Jersey Court Rules, (2) charged costs and attorney fees in excess of those actually incurred by Fein in prosecuting the foreclosure action, (3) charged fees not authorized by Plaintiff's mortgage documents, (4) charged excessive interest and (5) made misleading statements regarding the amount properly

---

also Evory, 505 F.3d 769 (developing the competent attorney standard in the context of claims under all three sections, §§ 1692d, 1692e and 1692f).

[7] Although neither letter was actually attached to the Complaint as filed, the Complaint references and relies on both letters and states that they are attached to Plaintiff's Answer and Counter Claim filed in the state court action. (Compl. ¶ 16; Decl. of Daniel C. Green, Ex. A [docket # 16].)  Therefore, the Court properly considers the copies of the letters themselves as attached to Plaintiff's state court filing.  See U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002) (on motion to dismiss under Fed. R. Civ. P. 12(b)(6), court properly considers attachments to complaint, documents integral to or explicitly relied upon in the complaint and matters of public record).  Further, because the Court here relies only on material properly considered at the motion to dismiss stage, the Court rejects Plaintiff's contention that this motion is not yet ripe for decision.  (See Pl.'s Opp'n 17.)

[8] Roger Mattson is Plaintiff's attorney in the present action and represented Plaintiff in the state court foreclosure action.

due under Plaintiff's mortgage agreement, all in alleged violation of §§ 1692e(2)(A)-(B) and 1692f(1). (Compl. ¶¶ 13, 33, 36.)

The Court finds that each of these alleged overcharges and deceptive statements would be readily recognized as overcharges by a competent attorney representing a debtor in a foreclosure action. Such an attorney can be assumed to be familiar with the applicable state court statutes and rules limiting allowable costs, attorneys fees and interest and is certainly familiar with the provisions of his or her own client's mortgage agreement. Similarly, such an attorney would be familiar with the usual costs associated with prosecuting a foreclosure action and would be on guard for overcharges of costs and fees normally assessed in such actions. Therefore, the Court concludes that none of these alleged overcharges and deceptive statements would in fact deceive a competent attorney representing a debtor in a foreclosure action. The Court likewise finds that the overcharges were not an unfair or unconscionable means of collecting a debt when directed at such an attorney because Fein's alleged attempt to collect these overcharges would be transparent to the attorney.

Plaintiff also alleges more generally that Fein violated the general application provisions of §§ 1692d, 1692e and 1692f by harassing and deceiving Plaintiff and using unfair and unconscionable means in attempting to collect a debt from Plaintiff. (Compl. ¶¶ 33, 36.) Given the interposition of such well-armed counsel between Fein and Plaintiff, the Court finds that Fein's payoff letters are not actionable under these general application provisions either.

Further, the Court notes that Plaintiff's attorney's conduct in this case supports the Court's conclusions. Plaintiff's attorney received the payoff letters from Fein on June 7, 2007. Less than three weeks later, on June 26, 2007, Plaintiff's attorney filed the Answer, Counterclaim

and Third Party Complaint in the foreclosure action, laying out Plaintiff's FDCPA claims in detail. This suggests that Plaintiff's attorney did not struggle long to uncover the alleged overcharges and deceptive statements in the June 7 letters and was able to fully catalogue them in Plaintiff's state court filing shortly after receiving the letters.

For these reasons, the Court finds that the Complaint has failed to state a claim for which relief can be granted against Fein under the FDCPA, and these claims are therefore dismissed. The Court declines to consider Fein's alternative arguments for dismissal of the FDCPA claims.

       3.    <u>LaSalle's Motion to Dismiss</u>

LaSalle did not raise in its Motion Fein's argument above that the letters are not actionable because they were sent to Plaintiff's attorney only. However, because the Complaint's FDCPA allegations against LaSalle are identical in relevant part to those against Fein, the Court dismisses these claims as well for the reasons stated above and declines to consider LaSalle's alternative arguments for dismissal of the FDCPA claims.

**C.    State Law And Common Law Claims**

Because the Court has dismissed the federal jurisdiction-conferring FDCPA claims in Counts I and II, and Plaintiff has not alleged a basis for diversity jurisdiction, the Court declines to exercise supplemental jurisdiction over the Complaint's state law and common law claims in Counts III through XI and dismisses them without prejudice. 28 U.S.C. § 1367(c)(3).[9]

---

[9] Count VII asserts a claim either under § 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, or under New Jersey's Consumer Fraud Act; it is not clear which. To the extent Count VII asserts a claim under the Federal Trade Commission Act, the Court dismisses that claim because there is no private right of action under that statute. <u>See</u> <u>Am. Airlines v. Christensen</u>, 967 F.2d 410, 414 (10th Cir. 1992).

## CONCLUSION

For the foregoing reasons, and for good cause shown,

IT IS on this 29th day of January, 2009,

ORDERED that Defendant Fein's Motion to Dismiss, [20], is GRANTED with prejudice with respect to Count I and without prejudice with respect to Counts III through XI; and it is further

ORDERED that Defendant LaSalle's Motion to Dismiss, [15], is GRANTED with prejudice with respect to Count II and without prejudice with respect to Counts III through XI; and it is further

ORDERED that Defendant Cenlar's Motion to Dismiss, [19], is GRANTED without prejudice; and it is further

ORDERED that this case is CLOSED.

s/ Anne E. Thompson

ANNE E. THOMPSON, U.S.D.J.

-13-

# EXHIBIT E

<u>NOT FOR PUBLICATION</u>                                    (Docket Nos. 5, 10)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

---

|  |  |
|---|---|
| DEBORAH ANN WHITTINGHAM, | : |
|  | : |
|        Plaintiff, | :    Civil No. 06-3016 (RBK) |
|        v. | :    **AMENDED OPINION** |
|  | : |
| MORTGAGE ELECTRONIC | : |
| REGISTRATION SERVICES, INC., | : |
| et al. | : |
|  | : |
|        Defendants. | : |

---

**KUGLER,** United States District Judge:

This matter comes before the Court on two motions, one by
Defendant Mortgage Electronic Registration Services, Inc.
("MERS") and Defendant HSBC Mortgage Services, Inc. ("HSBC"), and
one by Defendant Zucker, Goldberg & Ackerman, LLC ("Zucker") to
dismiss all or part of Plaintiff Deborah Ann Whittingham's
("Plaintiff") complaint for failure to state a claim upon which
relief can be granted, pursuant to Federal Rule of Civil
Procedure 12(b)(6). For the reasons set forth below, the Court
denies in part and grants in part Defendants MERS's and HSBC's
motion to dismiss and denies in part and grants in part Defendant
Zucker's motion to dismiss.

**I.    Background**

Plaintiff owns a residential property located at 825

Boundary Road in Woodbury Heights, New Jersey.  Defendant MERS held a mortgage on the property located at 825 Boundary Road in Woodbury Heights.  Defendant HSBC Mortgage Services ("HSBC") serviced the mortgage held by MERS, and Defendant Zucker represented MERS and HSBC in the foreclosure proceedings on the 825 Boundary Road property.

On or about June 30, 2005, HSBC and MERS initiated foreclosure proceedings against Plaintiff.  Plaintiff then requested a payoff amount from HSBC and MERS, to which HSBC responded on June 27, 2005 that Plaintiff's payoff balance was $17,997.86. Plaintiff alleges that this total is comprised of a principal balance of $14,411.77, interest of $1,352.59, unpaid fees of $2,193.50, and a recording fee of $40. On July 8, 2005, Plaintiff remitted the balance in full.

On July 7, 2006, Plaintiff filed a complaint in the United States District Court for the District of New Jersey, alleging that MERS, HSBC, and Zucker "engaged in a uniform scheme and course of conduct to inflate their profits by charging and collecting various fees not authorized by the loan documents or applicable law."  Specifically, Plaintiff alleges the following counts: (1) HSBC and Zucker violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et. seq, and the New Jersey Consumer Fraud Act, N.J.S.A. §§ 56:8-1-20, by attempting to collect amounts not permitted by law and by using unfair and

2

unconscionable collection methods; (2) MERS and HSBC breached their contract with Plaintiff; (3) MERS, HSBC, and Zucker engaged in intentional misrepresentation concerning Defendants' right to collect various fees; (4) MERS, Zucker and HSBC were negligent with respect to Plaintiff; (5) MERS, HSBC, and Zucker breached the duty of good faith and fair dealing with respect to their contractual relations with Plaintiff; (6) MERS, Zucker, and HSBC collected money not due and owing to them under applicable law, and this conduct unjustly enriched Defendants; (7) MERS's, Zucker's, and HSBC's acts and practices constitute unfair and deceptive acts or practices in or affecting commerce in violation of Section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a), which also constitutes a violation of the New Jersey Consumer Fraud Act; (8) MERS, Zucker, and HSBC used false, deceptive, or misleading representations or means, in violation of 15 U.S.C. § 1692e, to collect debts in default, which also constitutes a violation of the New Jersey Consumer Fraud Act; (9) MERS, Zucker and HSBC used unfair or unconscionable means to collect or to attempt to collect debts; and (10) MERS, Zucker, and HSBC charged for costs and attorneys fees in excess of the amount allowed under New Jersey's Fair Foreclosure Act and New Jersey Court Rules.[1]

---

[1]   Plaintiff frames her complaint in terms of a class action. However, to date, Plaintiff has not formally moved for class certification pursuant to Federal Rule of Civil Procedure

On October 3, 2006, Zucker moved to dismiss Plaintiff's complaint.  On November 28, 2006, MERS and HSBC moved to dismiss Plaintiff's complaint.  Plaintiff opposes both motions.

## II.  Standard

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept Plaintiff's allegations along with all reasonable inferences that may be drawn from them, as true.  Doe v. Delie, 257 F.3d 309, 313 (3d Cir. 2001) (citing Piecknick v. Commonwealth of Pennsylvania, 36 F.3d 1250, 1255 (3d Cir. 1994)).  The Court may dismiss the Complaint only if Plaintiff can prove no set of facts that would entitle them to relief.  Burstein v. Retirement Account Plan for Employees of Allegheny Health Educ. & Research Found., 334 F.3d 365, 374 (3d Cir. 2003) (citation omitted).

## III. Zucker's Motion

Zucker moves to dismiss all of Plaintiff's counts pursuant to Federal Rule of Civil Procedure 12(b)(6).

### A.   Fair Debt Collections Practices Act

Zucker moves to dismiss counts I, VIII, IX and X of Plaintiff's complaint, which allege that Zucker violated the Fair

---

23.  Therefore, the Court addresses the instant motions as though Plaintiff is the only Plaintiff in this action, rather than a class representative.

In addition, count XIV of Plaintiff's complaint is a "notice of class action."  Class actions are not substantive in nature, but rather procedural.  Therefore, the Court dismisses Count XIV of Plaintiff's complaint.

Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692k(d) et

seq. Specifically, Zucker argues that Plaintiff failed to file

her complaint within the FDCPA's one-year statute of limitations.

To support this argument, Zucker points to Plaintiff's payoff

letter, dated June 27, 2005.  Zucker states that because

Plaintiff did not file her complaint until July 5, 2006, her

complaint is out of time, and dismissal pursuant to Federal Rule

of Civil Procedure 12(b)(6) is proper. Plaintiff counters that

the statute began to run when Plaintiff paid the debt on July 8,

2005, and therefore her complaint was timely.

> The FDCPA provides, in pertinent part
>
> A debt collector may not use unfair or unconscionable
> means to collect or attempt to collect any debt. Without
> limiting the general application of the foregoing, the
> following conduct is a violation of this section:
>
> (1) The collection of any amount (including any interest,
> fee, charge, or expense incidental to the principal
> obligation) unless such amount is expressly authorized by
> the agreement creating the debt or permitted by law.

15 U.S.C. § 1692f(1).  The FDCPA further provides, "An action to

enforce any liability created by this [statute] may be brought in

any appropriate United States district court . . . within one

year from the date on which the violation occurs."  15 U.S.C. §

1692k(d).

Congress enacted the FDCPA to provide "a remedy for

consumers who have been subjected to abusive, deceptive or unfair

debt collection practices by debt collectors." Piper v. Portnoff

Law Assocs. Ltd., 396 F.3d 227, 232 (3d Cir. 2005) (citing

Pollice v. Nat'l Tax Funding, L.P., 225 F.3d 379, 400 (3d Cir.

2000)). The "threshold requirement of the FDCPA is that the

prohibited practices are used in an attempt to collect a 'debt.'"

Piper, 396 F.3d at 232 (citing Pollice, 225 F.3d at 400)); see

also 15 U.S.C. §§ 1692e-f. The FDCPA defines "debt" as "any

obligation of a consumer to pay money arising out of a

transaction in which the money, property, insurance, or services

which are the subject of the transaction are primarily for

personal, family, or household purposes, whether or not such

obligation has been reduced to judgment." 15 U.S.C. § 1692a(5).

"The term 'consumer' means any natural person obligated or

allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3).

Accordingly, courts construe either the attempt to collect a

debt using prohibited practices, or the actual collection of an

amount greater than the amount actually owed by the consumer as

violations of the FDCPA. See, e.g., Piper, 396 F.3d at 233

(finding that letters demanding payment in full for the amount

due from consumer plaintiffs to satisfy their water/sewer

services obligation to the municipality were within the scope of

the FDCPA); Sponaugle v. First Union Mortg. Corp., 40 F. A'ppx

715, 717 (3d Cir. 2002) ("The conduct prohibited under the FDCPA

includes 'The collection of any amount . . . unless such amount

is expressly authorized by the agreement creating the debt or

6

permitted by law.'") (quoting 15 U.S.C. § 1692f(1)).

The Court finds that because the statute has a one-year statute of limitations, that allegations in Plaintiff's complaint that the mortgage payoff letter constitutes a violation of the FDCPA are not timely.[2] However, Plaintiff's allegations that the actual payment of the debt constituted a violation of the FDCPA are timely. Therefore, the Court grants Zucker's motion to dismiss with regard to Count VIII of Plaintiff's complaint, as it alleges violation of 15 U.S.C. §§ 1692e(2)(A) and (B), which prohibit "false and misleading representations" by a debt collector in an attempt to collect a debt.[3]

The Court denies Zucker's motion to dismiss Counts I and X. Count I alleges that Defendants violated the FDCPA upon collection of the payoff balance from Plaintiff.  Count X provides for civil penalties for the alleged violation of the FDCPA.

B.   Duty of Good Faith and Fair Dealing

Zucker argues that Plaintiff did not enter a contract with Zucker, therefore Zucker "could not possibly have violated the

---

[2]     The Court does not decide whether the payoff letter is an attempt to collect a debt as contemplated by the FDCPA.

[3]     Moreover, the Court grants Zucker's motion to dismiss with regard to Count IX, as it alleges a violation of 15 U.S.C. § 1692f(1), which is an exact duplicate of the allegation contained in Count I. Count I also alleges a violation of 15 U.S.C. § 1692f(1).

duty of good faith and fair dealing as to Plaintiff."
Specifically, Zucker argues that only parties to a contract are
bound by the duty of good faith and fair dealing. Plaintiff
counters that in New Jersey, "an attorney may be liable to a
third party for misrepresentations," notwithstanding a direct
contractual relationship.

In <u>Petrillo v. Bachenberg</u>, 655 A.2d 1354 (N.J. 1995), the
New Jersey Supreme Court "recognized that there are circumstances
in which an attorney may owe a duty to a third party with whom
the attorney does not have a contractual relationship." <u>Banco
Popular N. Am. v. Gandi</u>, 876 A.2d 253, 264 (N.J. 2005) (citing
<u>Petrillo</u>, 655 A.2d at 1360).  Invoking the <u>Restatement of the Law
Governing Lawyers</u>, the <u>Petrillo</u> court elaborated that "attorneys
may owe a duty of care to non-clients when the attorneys know, or
should know, that non-clients will rely on the attorneys[']
representations and the non-clients are not too remote from the
attorneys to be entitled to protection. <u>Petrillo</u>, 655 A.2d at
1359. More specifically, if the attorneys intend their actions
"to induce a specific non-clients['] reasonable reliance on [the
attorneys'] representations, then there is a relationship between
the attorney and the third party. [Conversely], if the attorney
does absolutely nothing to induce reasonable reliance by a third
party, there is no relationship to substitute for the privity
requirement." <u>Gandi</u>, 876 A.2d at 265.

8

In Petrillo, the court found that the defendant attorney owed a duty to the plaintiff, a non-client. 655 A.2d at 1361. The plaintiff purchased property after relying on misleading reports provided by the seller's attorney. Id. at 1355-56. In this report, the defendant attorney stated that inspectors administered eight percolation tests on the subject property, two of which succeeded. Id. at 1355. In fact, inspectors performed thirty tests, only two of which succeeded. Id. The court concluded that "by compositing the report, the attorney effectively made a representation to the plaintiff 'to provide reliable information regarding the percolation tests' and should have foreseen that the plaintiff would rely on the total number of tests when making the decision whether to sign the contract." Gandi, 876 A.2d at 264 (quoting Petrillo, 655 A.2d at 1361).

Applying these principles to the facts at issue, Plaintiff sufficiently pled a cause of action for breach of the duty of good faith and fair dealing by Defendant Zucker. Here, Plaintiff alleges that she "relied on . . . Zucker's . . . false representations concerning [Defendants'] entitlement to collect" the fees represented in the payoff letter. (Pl.'s Compl. ¶ 28.) Therefore, Plaintiff adequately stated a cause of action for the breach of the duty of good faith and fair dealing against Zucker, and Zucker's motion to dismiss on Count V is denied.

C.   New Jersey's Consumer Fraud Act

_____Zucker moves to dismiss Counts VII and XIII of Plaintiff's complaint, alleging that New Jersey's Consumer Fraud Act does not apply to professionals, such as attorneys. In her brief opposing Zucker's motion, Plaintiff stipulates that she did not intend to allege that Zucker violated the New Jersey Consumer Fraud Act, and that her complaint was erroneous in that regard.

Therefore, the Court grants Zucker's motion to dismiss Counts VII and XIII as they pertain to Zucker.

D.   Intentional Misrepresentation

_____Zucker moves to dismiss Count III[4] of Plaintiff's complaint with regard to Zucker because Plaintiff failed to plead "intentional misrepresentation" with specificity as required by Federal Rule of Civil Procedure 9(b).[5]

The Court construes a claim of "intentional misrepresentation" as one for fraud. See Jewish Ctr. of Sussex County v. Whale, 432 A.2d 521, 524 (N.J. 1981). Under New Jersey law, the five elements of fraud are: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an

_____

[4]   In their brief supporting the instant motion, Zucker moves to dismiss "Count IV" because "Plaintiff failed to plead 'Intentional Misrepresentation' with sufficient specificity." However, Plaintiff alleges intentional misrepresentation in Count III.

[5]   Zucker alleges Plaintiff's complaint did not comply with Federal Rule of Civil Procedure. 9(d). In fact, the Rule dealing with the pleading requirements for fraud is Rule 9(b).

intention that the other person rely on it; (4) reasonable
reliance thereon by the other person; and (5) resulting damages."
<u>Gennari v. Weichert Co. Realtors</u>, 691 A.2d 350, 367 (N.J. 1997).

With regard to pleading a claim for fraud, Federal Rule of
Civil Procedure requires that, "In all averments of fraud . . .
the circumstances constituting fraud . . . shall be stated with
particularity." Fed. R. Civ. P. 9(b). The Third Circuit stated
that, "to satisfy Rule 9(b), plaintiffs must plead with
particularity the circumstances of the alleged fraud by pleading
the date, place or time of the fraud, or through alternative
means of injecting precision and some measure of substantiation
into their allegations of fraud." <u>Lum v. Bank of Am.</u>, 361 F.3d
217, 223-24 (3d Cir. 2004) (internal quotations omitted). More
succinctly, courts interpret this to mean that "the plaintiff
should plead the date, place or time of the fraud, and allege
with specificity who made the relevant misrepresentations. <u>Id.</u> at
224.

Plaintiff in this case failed to meet these requirements of
Rule 9(b). Specifically, Plaintiff fails to state who allegedly
made the misrepresentations. Rather, Plaintiff speaks
amorphously of MERS, HSBC and Zucker making the alleged
misrepresentations. Such imprecise pleading is not adequate
under the heightened pleading requirements of Rule 9(b).
Therefore, the Court grants Zucker's motion to dismiss Count III

11

of Plaintiff's complaint.

    E.    Negligence

_____Zucker moves to dismiss Count IV of Plaintiff's complaint by arguing that Zucker, as attorney representing HSBC in the foreclosure proceeding, owed no duty to Plaintiff, the adverse party.  Accordingly, Zucker argues that the Court cannot find Zucker liable for negligence.

    As stated in section III.B., supra, attorneys are generally not liable to third parties for the consequences of their actions because of privity requirements.  However, New Jersey law recognizes some limited situations in which an attorney can be held liable to non-client third parties.  This analysis regarding duty to a non-client is the same as the analysis the Court performed in section III.B., supra, where the Court denied Zucker's motion to dismiss Plaintiff's claim of the breach of the duty of good faith and fair dealing.  Accordingly, the Court denies Zucker's motion to dismiss Count IV.

    F.    New Jersey's Fair Foreclosure Act

_____Zucker moves to dismiss Count XI of Plaintiff's complaint, which alleges that Defendants violated New Jersey's Fair Foreclosure Act ("FFA"), N.J.S.A. § 2A:50-53 et seq. Specifically, Plaintiff alleges that Defendants violated N.J.S.A. § 2A:50-57(b)(3) by charging attorneys fees and costs in excess of those permitted by New Jersey Court Rules.

The policy behind the FFA is that "homeowners should be given every opportunity to pay their home mortgages, and thus keep their homes . . . ." N.J.S.A. § 2A:50-53.  To that end, the FFA creates a variety of procedures by which a debtor can cure a default on a mortgage, including a provision that "limits the amount of attorneys' fees to be paid by a mortgagor who is curing a mortgage default to 'the amount permitted under the Rules Governing the Courts of the State of New Jersey.'" In re Lipscomb, No. 05-18722, 2006 WL 4452988, *5 (Bankr. D.N.J. 2006) (citing N.J.S.A. § 2A:50-57). The FFA is essentially a notice provision, which provides specific guidance to residential mortgage lenders on the steps necessary to foreclose.  N.J.S.A. § 2A:50-56.

Plaintiff alleges that Defendants violated the attorney's fees provision of the FFA by including unreasonable and unallowable counsel fees in the payoff balance, which Plaintiff paid.  As a remedy, Plaintiff demands reimbursement of the excess counsel fees from Zucker. The Court finds that the FFA does not provide such a remedy to Plaintiff.  The statutory language is silent as to reimbursement of fees in this manner, and plaintiff cites no case law to support her contention that the FFA provides a private right of action.  Therefore, the Court grants Zucker's motion to dismiss with regard to Count XI.

G.    Violation of New Jersey Court Rules

13

_____Plaintiff alleges that Zucker violated New Jersey Court Rules 4:42-9(a)(4) and 4:42-10(a), and demands the return of excess charges, with interest.  However, the New Jersey Court Rules are procedural in nature, and provide no independent cause of action whereby a plaintiff can pursue a remedy for a violation of the rules.  Therefore, the Court grants Zucker's motion to dismiss Count XII.

H.   Unjust Enrichment

_____Plaintiff alleges that Defendants "collected monies not due and owing under applicable contract law," and that this conduct unjustly enriched Defendants.  Zucker argues that Plaintiff never conferred a benefit on Zucker for which Plaintiff expected remuneration, and therefore Zucker argues that the Court should dismiss Count VI of Plaintiff's complaint. The crux of Zucker's argument for dismissal of this count is that there was "never any contractual or quasi-contractual relationship between Plaintiff and Zucker that might trigger an unjust enrichment claim."

Under New Jersey law, there are two basic elements to a claim for unjust enrichment.  First, the plaintiff must demonstrate "both that defendant received a benefit and that retention of that benefit without payment would be unjust." VRG Corp. v. GKN Realty Corp., 641 A.2d 519, 526 (N.J. 1994). To establish the injustice, the plaintiff must further demonstrate "that it expected remuneration from the defendant at the time it

14

performed or conferred a benefit on defendant and that the
failure of remuneration enriched defendant beyond its contractual
rights." Id.

As stated by the Third Circuit, "the essence of the doctrine
of unjust enrichment is that there is no direct relationship
between the parties." Benefit Trust Life Ins. Co. v. Union Nat'l
Bank, 776 F.2d 1174, 1177 (3d Cir. 1985).[6] Therefore, Zucker's
argument regarding no direct contractual or even quasi-
contractual relationship is misplaced.  Plaintiff alleges that
she overpaid Zucker for counsel fees for work Zucker allegedly
performed in the foreclosure proceeding on her property.
Assuming Plaintiff's allegations are true, as required by the
standard on a motion to dismiss, this is sufficient to state a
claim for unjust enrichment, because Plaintiff alleges she paid
Zucker, albeit indirectly, fees above what the contract entitled
Zucker to receive.  That is the essence of an unjust enrichment
claim.  For this reason, the Court denies Zucker's motion to
dismiss Count VI.

    I.  Class Action

Finally, Zucker moves to dismiss Count XIV of Plaintiff's
complaint, which is a notice of class action. As discussed in
note 1, supra, the Court grants Zucker's motion to dismiss count

---

[6]    The Court notes that this case deals with Pennsylvania
law.  However, the doctrine of unjust enrichment im Pennsylvania
is substantially similar to the law in New Jersey.

15

XIV.

## IV.  MERS's and HSBC's Motion to Dismiss

Defendants MERS and HSBC move to dismiss certain counts in Plaintiff's complaint, including Counts I, VIII, IX, and X which allege violations of the FDCPA; Counts XI and XII, which allege violations of the FFA and New Jersey Court Rules, respectively; and Count XIII, which alleges a violation of the New Jersey Consumer Fraud Act.

### A.   Fair Debt Collections Practices Act

MERS and HSBC move to dismiss all the counts in Plaintiff's complaint that allege violations of the FDCPA.  Primarily, MERS and HSBC argue that they are not "debt collectors" as defined by the statute.  Alternatively, MERS and HSBC argue that the statute of limitations expired.

The FDCPA defines a "debt collector" as "any person . . . who regularly collects or attempts to collect . . . debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The term "debt collector" does not include:

> [A]ny person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (ii) concerns a debt which was originated by such person [or] (iii) concerns a debt which was not in default at the time it was obtained by such person.

15 U.S.C. § 1692a(6)(G).  Importantly, the legislative history of the FDCPA demonstrates that the term "debt collectors" does not encompass a mortgage servicing company. Perry v. Stewart Title

16

Co., 756 F.2d 1197, 1208 (5th Cir. 1985) (citing S. REP. No. 95-382, at 3 (1977)); see also Dawson v. Dovenmuehle Mortgage, Inc., No. 00-6171, 2002 WL 501499, at *5 (E.D. Pa. Apr. 3, 2002) ("A loan servicer, someone who services but does not own the debt, is not a 'debt collector' if the servicer begins servicing of the loan before default. . . . [T]he statute applies to a mortgage servicing company only where the mortgage at issue was already in default at the time when servicing began.").

With regard to MERS, the mortgage holder, Plaintiff fails to allege sufficient facts to bring MERS within the statute's definition of a "debt collector." Plaintiff does not allege that MERS collects or attempts to collect debts owed to another. Nor does Plaintiff allege that the loan was in default that the time MERS acquired it.

With regard to HSBC, the mortgage servicing company, Plaintiff failed to allege in her complaint that the mortgage was in default at the time HSBC began servicing the loan.[7] Therefore, HSBC is not a debt collector, and the FDCPA is inapplicable. Therefore, the Court grants MERS's and HSBC's motion to dismiss counts I, VIII, IX, and X as they pertain to MERS and HSBC.

        B.    FFA and New Jersey Court Rules

    As discussed in sections III.F. and III.G., supra, neither

---

    [7]    Moreover, HSBC notes in its brief supporting its motion to dismiss that HSBC began servicing the mortgage before Plaintiff defaulted.

the FFA nor the New Jersey Court Rules provide a private right of action.  For that reason, the Court grants MERS's and HSBC's motion to dismiss Counts XI and XII with regard to MERS and HSBC.

C.   New Jersey Consumer Fraud Act

MERS and HSBC move to dismiss Count XIII of Plaintiff's complaint, which alleges that by charging and receiving illegal or excessive charges, Defendants engaged in unconscionable business practices in violation of the New Jersey Consumer Fraud Act ("CFA"), N.J.S.A. §§ 56:8-1-20.

The CFA provides, in pertinent part

The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice . . . .

N.J.S.A. § 56:8-2 (emphasis added). Courts hold that this provision is disjunctive in nature; therefore, to allege a violation of the CFA, a plaintiff need only allege "either an unconscionable commercial practice, or fraud, or deception . . . in connection with sale or advertisement of [merchandise or real estate] . . . to demonstrate statutory violation. Hyland v. Aquarian Age 2,000, Inc., 372 A.2d 370, 372 (N.J. Super. Ch. 1977).

18

Plaintiff alleges "unconscionable conduct" and "fraud" in her complaint. Moreover, Plaintiff alleges that this conduct was in connection with MERS's and HSBC's subsequent performance of the contract related to the mortgage (i.e., sale of real estate). See Weiss v. First Unum Life Ins. Co., No. 05-5428, 2007 U.S. App. LEXIS 7613, at *34 (3d Cir. Apr. 3, 2007) ("CFA covers fraud both in the initial sale (where the seller never intends to pay), and fraud in the subsequent performance (where the seller at some point elects not to fulfill its obligations)."). Therefore, the Court finds that Plaintiff adequately stated a cause of action under the CFA, and the Court accordingly denies MERS's and HSBC's motion to dismiss count XIII.

## IV.   Conclusion

With regard to Zucker's motion to dismiss, the Court grants Zucker's motion on counts III, VII, XI, XII, XIII, and XIV.  The Court denies Zucker's motion with regard to counts I, IV, V, VI, X.

With regard to Defendants MERS and HSBC, the Court grants their motion on counts I, VIII, IX, X, XI, and XII.  The Court denies their motion on count XIII.

Dated: 5/15/2007                    s/Robert B. Kugler
                                    ROBERT B. KUGLER
                                    United States District Judge

19