UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
(CAMDEN VICINAGE)

LEWIS G. ADLER, ESQUIRE
26 NEWTON AVENUE
WOODBURY, NJ 08096
(856)845-1968
ATTORNEY FOR PLAINTIFF

| | |
|---|---|
| JOHN W. OLIVER, III<br>Individually and as a class representative<br>On behalf of others similarly situated<br><br>Plaintiff<br><br>vs.<br><br>AMERICAN HOME MORTGAGE<br>SERVICING, Inc.<br>AND JOHN DOE SERVICERS 1-100<br>AND JOHN DOE LAW FIRMS 1-10<br>Defendant. | CASE NO.<br>1:09-cv-000001 (NJH)(JS)<br><u>Civil Action</u><br><br>Certification of Counsel |

**I, Lewis G. Adler, Esquire,** of full age hereby certify to the following:

    1.    This certification is being to support the Plaintiff's opposition to the motions filed by American Home Mortgage Servicing, Inc.

    2.    I have attached true copies of the following exhibits:

        A). Exhibit A: Chapter 156 of New Jersey Session Laws 1979

        B) Exhibit B: *Evory v. RJM Acquisitions Funding, LLC et al. 2007 US App. Lexis 24740 (2007)*

I hereby certify that the foregoing statements made by me are true. I realize that if any of these statements are willfully false, I am subject to punishment.

DATED: 3/23/09        /s/Lewis G. Adler, Esquire
                     Lewis G. Adler, Esquire

# EXHIBIT A

1 year. Upon written request to the board by a candidate, the board shall make his examination available for inspection by the candidate.

C. 52:17B-41.6  License renewal requirements.

6. (New section) The board may require all ophthalmic dispensers now or hereafter licensed in this State to take board-approved courses of study relating to the practice of the profession of opticianry or to maintain proficiency in some other alternative manner to be prescribed and established by the board in order to qualify for license renewal.

7. This act shall take effect on the sixtieth day following its enactment.

Approved July 19, 1979.

## CHAPTER 156

An Act concerning interest and usury and supplementing Title 31 of the Revised Statutes.

Be it enacted by the Senate and General Assembly of the State of New Jersey:

C. 31:1-1.1  Establishment of interest rate.

1. Notwithstanding any provisions of R. S. 31:1-1 to the contrary, the commissioner may by regulation establish a rate of interest which may be charged by any person on loans made by them equal to the rate allowed by Federal law or regulation to be charged by national banking associations at any time when the rate so allowed by Federal law exceeds 8% per annum. Nothing herein shall authorize any person to make any loan which he is not authorized by law to make, nor shall anything in this act apply to loans secured by a first lien on real estate on which there is erected or to be erected a structure containing one, two, three, four, five or six dwelling units, a portion of which structure may also be used for nonresidential purposes.

Where in any other law a rate of interest applicable to loans regulated by this section is referred to as that established by R. S. 31:1-1, the rate applicable shall be as established herein.

2. This act shall take effect immediately.

Approved July 19, 1979.

# EXHIBIT B

**Document Links:**
Start of Document
PRIOR HISTORY:
CASE SUMMARY
PROCEDURAL POSTURE:
OVERVIEW:
OUTCOME:
CORE TERMS:
LexisNexis® Headnotes
COUNSEL:
JUDGES:
OPINION BY:
OPINION

SHEPARD'S® 

2007 U.S. App. LEXIS 24740, *

TAMMY A. EVORY, et al., individually and on behalf of all others similarly situated, Plaintiffs-Appellants, v. RJM ACQUISITIONS FUNDING L.L.C., et al., Defendants-Appellees. KELLY LAUER and KARLA LAUER, Plaintiffs-Appellants, v. MASON, SILVER, WENK & MISHKIN, LLC, et al., Defendants-Appellees. KEVIN I. CAPTAIN, Plaintiff-Appellant, v. ARS NATIONAL SERVICES, INC., Defendant-Appellee. PHILIP JACKSON, et al., individually and on behalf of all others similarly situated, Plaintiffs-Appellants, v. NATIONAL ACTION FINANCIAL SERVICES, INC., et al., Defendants-Appellees.

No. 06-2130, No. 06-2131, No. 06-2132, No. 06-2134, No. 06-2157, No. 06-2271, No. 06-3129, No. 06-3162, No. 06-3327, No. 06-3439, No. 06-3446

UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

2007 U.S. App. LEXIS 24740

September 20, 2007, Argued
October 23, 2007, Decided

**PRIOR HISTORY:** [*1]
No. 06-2130, No. 06-2131, No. 06-2132, No. 06-2134, No. 06-2157. Appeals from the United States District Court for the Southern District of Indiana, Indianapolis Division. Nos. 1:04-cv-2016-DFH-TABH-TAH, 05-cv-0140-DFH-TAB, 05-cv-0216-DFH-TAB, 05-cv-0218-DFH-TAB, 05-cv-0794-DFH-TAB--David F. Hamilton, Judge.

No. 06-2271. Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. No. 05 C 3911--George W. Lindberg, Judge.

No. 06-3129. Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division. No. 1:05-cv-1515-DFH-TAB--David F. Hamilton, Judge.

No. 06-3162, No. 06-3327, No. 06-3439, No. 06-3446. Appeals from the United States District Court for the Northern District of Illinois, Eastern Division. Nos. 04 C 1805, 04 C 5056, 05 C 0724, 05 C 3759--Ruben Castillo, Judge, and James F. Holderman, Chief Judge.
Headen v. Asset Acceptance, LLC, 458 F. Supp. 2d 768, 2006 U.S. Dist. LEXIS 21838 (S.D. Ind., 2006)
Captain v. ARS Nat'l Servs., 2006 U.S. Dist. LEXIS 47796 (S.D. Ind., July 7, 2006)
Jackson v. Nat'l Action Fin. Servs., 441 F. Supp. 2d 877, 2006 U.S. Dist. LEXIS 50897 (N.D. Ill., 2006)
Lauer v. Mason, 2006 U.S. Dist. LEXIS 20080 (N.D. Ill., Apr. 17, 2006)

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Appellant consumers brought separate actions against appellees, debt collection agencies, alleging that the agencies violated provisions of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C.S. § 1692 et seq. The consumers appealed the orders of the U.S. District Courts for the Southern District of Indiana and the Northern District of Illinois which dismissed the actions or granted summary judgment, and the appeals were consolidated.

**OVERVIEW:** The appeals raised issues concerning application of FDCPA to consumers represented by lawyers, the proper treatment of agency settlement offers which purport to be onetime offers, and the propriety of deciding a question of a false or deceptive representation on the pleadings. The appellate court first held that a communication with a consumer's lawyer was a communication with the consumer, and any notice sent to the lawyer was required to contain the information that would be required if the notice were sent to the consumer directly. Further, while a representation to a lawyer which was unlikely to deceive or mislead a competent lawyer was not actionable, an agency's false representation was actionable whether it was made to the lawyer or directly to the consumer. Also, the concern

that putative onetime settlement offers with a specified deadline could mislead the consumers to think that future settlement was not possible could be alleviated by safe harbor language that the agencies were not obligated to renew the offer. Finally, a claim of deception was a question of fact which could be decided on the pleadings in cases where the question of deception or falsity was clear.

**OUTCOME:** The order granting summary judgment to an agency was affirmed, but the orders dismissing actions were reversed and such cases were remanded for further proceedings.

**CORE TERMS:** consumer, collector, unsophisticated, deceptive, collection, settlement offer, notice, misleading, written notice, per se, recipient, deceived, Fair Debt Collection Practices Act, limited-time, deception, discount, deadline, forbid, lawful, matter of law, consumer debt, summary judgment, safe-harbor, specialist, fraction, dunning, deceive, misled, we'll, unpaid balance

**LexisNexis® Headnotes** ◆ Hide Headnotes

Banking Law > Consumer Protection > Fair Debt Collection > Communications
HN1 See 15 U.S.C.S. § 1692g.

Banking Law > Consumer Protection > Fair Debt Collection > Communications
HN2 The required written notice of a debt must be sent to "the consumer," that is, to the person claimed to owe a debt. The consumer's lawyer is not that person. But if the debt collector knows that the consumer is represented by a lawyer, then (with exceptions) he may not communicate with the consumer directly. 15 U.S.C.S. § 1692c(a)(2). He must go through the lawyer. The lawyer receives the notice and shares it with, or explains it to, his client. Hence the debt collector is communicating with the consumer within the meaning of the Fair Debt Collection Practices Act, 15 U.S.C.S. § 1692 et seq., which defines "communication" as the conveying of information regarding a debt directly or indirectly to any person through any medium. 15 U.S.C.S. § 1692a(2). The lawyer is both "any person" and "any medium."

Banking Law > Consumer Protection > Fair Debt Collection > Communications
HN3 Once a party to a legal dispute is represented, the other party must deal with him through his lawyer, and not directly. Any written notice sent to the lawyer must contain the information that would be required by the Fair Debt Collection Practices Act, 15 U.S.C.S. § 1692 et seq., if the notice were sent to the consumer directly.

Banking Law > Consumer Protection > Fair Debt Collection > Unfair Practices
HN4 15 U.S.C.S. § 1692d forbids any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. 15 U.S.C.S. § 1692e forbids a debt collector to use any false, deceptive, or misleading representation or means in connection with the collection of any debt. 15 U.S.C.S. § 1692f forbids a debt collector to use any unfair or unconscionable means to collect or attempt to collect any debt.

Banking Law > Consumer Protection > Fair Debt Collection > Unfair Practices
HN5 The Fair Debt Collection Practices Act, 15 U.S.C.S. § 1692 et seq., is intended for the protection of unsophisticated consumers (sophisticated consumers presumably do not need its protection), so that, in deciding whether for example a representation made in a dunning letter is misleading, a court asks whether a person of modest education and limited commercial savvy would be likely to be deceived. The standpoint is not that of the least intelligent consumer in this nation of 300 million people, but that of the average consumer in the lowest quartile (or some other substantial bottom fraction) of consumer competence. This is implicit in the rule that a plaintiff cannot withstand summary judgment just by presenting his affidavit that he was confused. He must show that he is representative of the protected group. But if a debt collector targets a particularly vulnerable group--say, consumers who he knows have a poor command of English--the benchmark for deciding whether the communication is deceptive is the competence of the substantial bottom fraction of that group.

Banking Law > Consumer Protection > Fair Debt Collection > Unfair Practices
HN6 Since most lawyers who represent consumers in debt-collection cases are knowledgeable about the law and practices of debt collection, since those who are not are able to inform themselves sufficiently to be able to represent their consumer clients competently, and since a debt collector cannot be expected to know how knowledgeable a particular consumer's lawyer is, a representation by the debt collector that would be

unlikely to deceive a competent lawyer, even if he is not a specialist in consumer debt law, is not actionable under the Fair Debt Collection Practices Act, 15 U.S.C.S. § 1692 et seq.

Banking Law > Consumer Protection > Fair Debt Collection > Unfair Practices

HN7 A false claim of fact in a dunning letter may be as difficult for a lawyer to see through as a consumer. Suppose the letter misrepresents the unpaid balance of the consumer's debt. The lawyer might be unable to discover the falsity of the representation without an investigation that he might be unable, depending on his client's resources, to undertake. Such a misrepresentation is actionable under the Fair Debt Collection Practices Act, 15 U.S.C.S. § 1692 et seq., whether made to the consumer directly, or indirectly through his lawyer.

Banking Law > Consumer Protection > Fair Debt Collection > Unfair Practices

HN8 An unsophisticated consumer is protected against receiving a false impression of his options by a debt collector's including with a settlement offer the following language: "We are not obligated to renew this offer." The word "obligated" is strong and even the unsophisticated consumer will realize that there is a renewal possibility but that it is not assured.

Banking Law > Consumer Protection > Fair Debt Collection > Unfair Practices
Evidence > Testimony > Experts > Admissibility

HN9 Survey evidence in debt-collection as in trademark cases must comply with the principles of professional survey research; if it does not, it is not even admissible, Fed. R. Evid. 702, let alone probative of deception.

Banking Law > Consumer Protection > Fair Debt Collection > Unfair Practices
Civil Procedure > Pretrial Judgments > Judgment on the Pleadings

HN10 A claim of deception can be rejected on the pleadings in a case under the Fair Debt Collection Practices Act, 15 U.S.C.S. § 1692 et seq., since courts treat issues of deception as ones of fact rather than of law.

Banking Law > Consumer Protection > Fair Debt Collection > Unfair Practices

HN11 Although a violation of state law is not in itself a violation of the Fair Debt Collection Practices Act, 15 U.S.C.S. § 1692 et seq., a threat to impose a penalty that the threatener knows is improper because unlawful is a good candidate for a violation of 15 U.S.C.S. §§ 1692d, 1692e.

**COUNSEL:** For TAMMY A. EVORY, ANGELA T. HUBBARD, CHRISTIAN M. CLINE, KEVIN I. CAPTAIN, PHILLIP JACKSON, DANIECE BONNER, PHILLIP JACKSON, individually and on behalf of all others similarly situated, SHARON ACKMAN, individually and on behalf of all others similarly situated, Plaintiff-Appellants (06-2130, 06-2131, [*2] 06-2132, 06-2134, 06-3129, 06-3446, 06-3162, 06-3327): David J. Philipps, PHILIPPS & PHILIPPS, Palos Hills, IL, USA.

For RJM ACQUISITIONS FUNDING L.L.C., a Delaware Limited Liability Company, Defendant-Appellee: Amy R. Jonker, MESSER & STILP, Chicago, IL, USA.

For MIDLAND CREDIT MANAGEMENT, INCORPORATED, a Kansas Corporation, MRC RECEIVABLES CORPORATION, a Delaware Corporation, ASSET ACCEPTANCE, LLC, NATIONAL ACTION FINANCIAL SERVICES, INCORPORATED, a Georgia Corporation, MIDLAND FUNDING NCC-2 CORPORATION, Defendant-Appellees (06-2131, 06-2157, 06-3162, 06-3327): Christine Olson McTigue, David M. Schultz, HINSHAW & CULBERTSON, Chicago, IL, USA.

For M.R.S. ASSOCIATES, INCORPORATED, a New Jersey Corporation, ARS NATIONAL SERVICES, INCORPORATED, a California Corporation, doing business as Associates Recovery Systems, Defendant-Appellees (06-2132, 06-3129): David L. Hartsell, MCGUIREWOODS, Chicago, IL, USA.

For MIDLAND CREDIT MANAGEMENT, INCORPORATED, a Kansas Corporation, MRC RECEIVABLES CORPORATION, a Delaware Corporation, Defendant-Appellees (06-2134): Christine Olson McTigue, David M. Schultz, HINSHAW & CULBERTSON, Chicago, IL, USA; Jeffrey A. Topor, WINEBERG, SIMMONDS & NARITA, San Francisco, [*3] CA.

For KEVIN L. HEADEN, Plaintiff-Appellant: Derek B. Rieman, EDELMAN, COMBS & LATTURNER, Chicago, IL, USA.

For KELLY LAUER, KARLA LAUER, Plaintiff-Appellants: Christopher V. Langone, Mark T. Lavery, Chicago, IL, USA.

For MASON, SILVER, WENK & MISHKIN, LLC, TIMOTHY E. HIRSCH, Defendant-Appellees: Chip G. Schoneberger, CLAUSEN MILLER, Chicago, IL, USA.

For MIDLAND CREDIT MANAGEMENT, INCORPORATED, Defendant-Appellee (06-3446, 06-3327, 06-3439): Christine Olson McTigue, David M. Schultz, HINSHAW & CULBERTSON, Chicago, IL, USA; Tomio Narita, SIMMONDS & NARITA, San Francisco, CA, USA.

For NOAH DOWNS, JR., Plaintiff-Appellant: Daniel A. Edelman, EDELMAN, COMBS & LATTURNER, Chicago, IL, USA.

**JUDGES:** Before CUDAHY, POSNER, and WILLIAMS, Circuit Judges.

**OPINION BY:** POSNER

**OPINION**

POSNER, *Circuit Judge.* We have consolidated for decision four intertwined cases that present nine questions under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.*, several of which have engendered considerable controversy at the circuit level and even some circuit splits. We shall first try to answer the questions and then indicate the disposition of each of the appeals that follows from our answers.

Here are the questions:

1. Whether, [*4] if the consumer (as the statute refers to the putative debtor) is represented by a lawyer, a debt collector must give the same written notice to the lawyer that section 1692g would require were the consumer unrepresented and the notice sent directly to him.

2. Whether communications to lawyers are subject to sections 1692d through 1692f, which forbid harassing, deceptive, and unfair practices in debt collection. Compare *Sayyed v. Wolpoff & Abramson*, 485 F.3d 226 (4th Cir. 2007), answering yes, with *Guerrero v. RJM Acquisitions LLC*, No. 05-15121, 2007 U.S. App. LEXIS 20072, 2007 WL 2389825 (9th Cir. Aug. 23, 2007) (per curiam), and *Kropelnicki v. Siegel*, 290 F.3d 118, 128 (2d Cir. 2002), both answering no.

3. Whether, if the answer to question 2 is yes, the standard applicable to determining whether a representation is false, deceptive, or misleading under section 1692e is the same whether the representation is made to the lawyer or to his client.

4. Whether a settlement offer contained in a letter from the debt collector to a consumer is lawful per se under section 1692f. Compare *Lewis v. ACB Business Services, Inc.*, 135 F.3d 389, 398-400 (6th Cir. 1998) (yes), with *Goswami v. American Collections Enterprise, Inc.*, 377 F.3d 488, 495 (5th Cir. 2004) [*5] (no).

5. If it is not per se lawful, whether its lawfulness should be affected by whether it is addressed to a lawyer, rather than to the consumer directly.

6. Whether there should be a safe harbor for a debt collector accused of violating section 1692e by making such an offer.

7. Again, if such a letter is not per se lawful, what type of evidence a plaintiff must present to prove that a settlement offer violates section 1692e.

8. Whether the determination that a representation is or is not false, deceptive, or misleading under section 1692 is always to be treated as a matter of law. Compare *McMillan v. Collection Professionals, Inc.*, 455 F.3d 754, 759 (7th Cir. 2006); *Taylor v. Cavalry Investment, LLC*, 365 F.3d 572, 575 (7th Cir. 2004), and *Walker v. National Recovery, Inc.*, 200 F.3d 500, 502, 504 (7th Cir. 1999) (no), with *Wilson v. Quadramed Corp.*, 225 F.3d 350, 353 n. 2 (3d Cir. 2000), and *Terran v. Kaplan*, 109 F.3d 1428, 1432-33 (9th Cir. 1997) (yes).

9. Whether, if that determination is not *always* a matter of law, nevertheless a charge under section 1692e can sometimes be dismissed on the pleadings on the ground that the challenged representation was, as a matter of law, not false [*6] or misleading.

The questions thus fall into three overlapping groups. The first is the application of the Fair Debt Collection Practices Act to lawyers (questions 1 through 3, and 5); the second is the proper treatment under the Act of settlement offers (questions 4 through 7); and the last (questions 8 and 9) concerns the role of Fed. R. Civ. P. 12(c) in deciding claims of violation of section 1692e.

Section 1692g provides:

> HN1 (a) Notice of debt; contents
>
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing--
>
>> (1) the amount of the debt;
>>
>> (2) the name of the creditor to whom the debt is owed;
>>
>> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>>
>> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt [*7] collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>>
>> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

(There are additional subsections, but they do not require discussion.) *HN2* The required written notice must be sent to "the consumer," that is, to the person claimed to owe a debt. The consumer's lawyer is not that person. But if the debt collector knows that the consumer is represented by a lawyer, then (with immaterial exceptions) he may not communicate with the consumer directly. § 1692c(a)(2). He must go through the lawyer. The lawyer receives the notice and shares it with, or explains it to, his client. Hence the debt collector is communicating with the consumer within the meaning of the Act, which defines "communication" as "the conveying of information regarding a debt *directly or indirectly* to any person through any medium." § 1692a(2) (emphasis added). The lawyer is [*8] both "any person" and "any medium."

It would be passing odd if the fact that a consumer was represented excused the debt collector from having to convey to the consumer the information to which the statute entitles him. For example, sections 1692g(a)(1) and (2) provide that the required notice must state the amount of the debt and the name of the creditor. Is it to be believed that by retaining a lawyer the debtor disentitles himself to the information? Or that the debt collector, though knowing that the debtor is represented, can communicate directly with him in defiance of the principle that

*HN3* once a party to a legal dispute is represented, the other party must deal with him through his lawyer, and not directly? We conclude that any written notice sent to the lawyer must contain the information that would be required by the Act if the notice were sent to the consumer directly. National Consumer Law Center, *Consumer Credit Law Manual* § 8.02[5][b] (2004); cf. *Heintz v. Jenkins*, 514 U.S. 291, 115 S. Ct. 1489, 131 L. Ed. 2d 395 (1995).

The next question is whether debt collectors can, without liability, threaten, make false representations to, or commit other abusive, deceptive, or unconscionable acts against a consumer's [*9] lawyer, in violation of sections 1692d, e, or f. These sections do not designate any class of persons, such as lawyers, who can be abused, misled, etc., by debt collectors with impunity. *HN4* Section 1692d forbids "any conduct the natural consequence of which is to harass, oppress, or abuse *any person* in connection with the collection of a debt" (emphasis added). Section 1692e forbids a debt collector to "use any false, deceptive, or misleading representation or means in connection with the collection of any debt." And section 1692f forbids a debt collector to "use any unfair or unconscionable means to collect or attempt to collect any debt."

It is true that a lawyer is less likely to be deceived, intimidated, harassed, and so forth (for simplicity, we shall assume that only deception is alleged) than a consumer. But that is an argument not for immunizing practices forbidden by the statute when they are directed against a consumer's lawyer, but rather for recognizing that the standard for determining whether particular conduct violates the statute is different when the conduct is aimed at a lawyer than when it is aimed at a consumer.

The courts have ruled that *HN5* the statute is intended for [*10] the protection of unsophisticated consumers (sophisticated consumers presumably do not need its protection), so that in deciding whether for example a representation made in a dunning letter is misleading the court asks whether a person of modest education and limited commercial savvy would be likely to be deceived. *Olson v. Risk Management Alternatives, Inc.*, 366 F.3d 509, 512-13 (7th Cir. 2004). The standpoint is not that of the *least* intelligent consumer in this nation of 300 million people, *Chuway v. National Action Financial Services, Inc.*, 362 F.3d 944, 948-49 (7th Cir. 2004); *Gammon v. GC Services Ltd. Partnership*, 27 F.3d 1254, 1257 (7th Cir. 1994); cf. *Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993), but that of the average consumer in the lowest quartile (or some other substantial bottom fraction) of consumer competence. This is implicit in the rule that a plaintiff cannot withstand summary judgment just by presenting his affidavit that *he* was confused. *Taylor v. Cavalry Investment, LLC, supra*, 365 F.3d at 574-75; *Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1061-62 (7th Cir. 2000). He must show that he is representative of the protected group. [*11] *Chuway v. National Action Financial Services, Inc., supra*, 362 F.3d at 948.

But if the debt collector has targeted a particularly vulnerable group--say, consumers who he knows have a poor command of English--the benchmark for deciding whether the communication is deceptive would be the competence of the substantial bottom fraction of *that* group. Cf. U.S.S.G. § 3A1.1 and Application Note 2; *United States v. Bragg*, 207 F.3d 394, 399 n. 16 (7th Cir. 2000); *United States v. Grimes*, 173 F.3d 634, 638 (7th Cir. 1999).

By the same token, the "unsophisticated consumer" standpoint is inappropriate for judging communications with lawyers, *Dikeman v. National Educators, Inc.*, 81 F.3d 949 (10th Cir. 1996), just as it is inappropriate to fix a physician's standard of care at the level of that of a medical orderly. W. Page Keeton et al., *Prosser & Keeton on the Law of Torts* § 32, p. 185 (5th ed. 1984). But what should the standard be? Most lawyers who represent consumers in debt collection cases are familiar with debt collection law and therefore unlikely to be deceived. But sometimes a lawyer will find himself handling a debt collection case not because he's a specialist but because a friend or [*12] relative has asked him to handle it. His sophistication in collection matters would be less than that of the specialist practitioner but much greater than that of the average unsophisticated consumer. He would not have to be an expert on the Fair Debt Collection Practices Act to be able to look it up and discover what information sections 1692g(a)(3)-(5) require be disclosed to the consumer, and then compare the requirements with the content of the communication that he has received on his client's behalf. *HN6* Since, therefore, most lawyers who represent consumers in debt-collection cases are knowledgeable about the law and practices of debt collection, since those who are not should be able to inform themselves sufficiently to be able to represent their consumer clients competently, and since the debt collector cannot be expected to know how knowledgeable a particular consumer's lawyer is, we conclude that a representation by a debt collector that would be unlikely to deceive a competent lawyer, even if he is not a specialist in consumer debt law, should not be actionable.

We have assumed for the sake of simplicity that the communication to the lawyer is alleged to be *deceptive*; what if [*13] instead it is alleged to be false or misleading, terms also found in section 1692e? "Misleading" is similar to "deceptive," except that it can be innocent; one intends to deceive, but one can mislead through inadvertence. A sophisticated person is less likely to be either deceived or misled than an unsophisticated one. That is less true if a statement is false. *HN7* A false claim of fact in a dunning letter may be as difficult for a lawyer to see through as a consumer. Suppose the letter misrepresents the unpaid balance of the consumer's debt. The lawyer might be unable to discover the falsity of the representation without an investigation that he might be unable, depending on his client's resources, to undertake. Such a misrepresentation would be actionable whether made to the consumer directly, or indirectly through his lawyer.

We [*14] move now from the lawyer cases to the cases of settlement offers communicated directly to consumers, where there is no lawyer in the picture. But later we shall have to bring the lawyer back into the picture in order to round out our discussion of the difference between consumers and lawyers as recipients of potentially misleading statements from debt collectors.

It is apparently common for debt collectors to send letters to consumers that say such things as (these examples are all taken from the cases before us) "we would like to offer you a unique opportunity to satisfy your outstanding debt"--"a settlement of 25% OFF of your current balance. SO YOU ONLY PAY $[___] In ONE PAYMENT that must be received no later than 40 days from the date on this letter." Or "TIME'S A WASTIN'!...Act now and receive 30% off if you pay by March 31st." Or we are "currently able to offer you a substantial discount of *50% off* your Current Balance *if we receive payment by 05-14-2004* "(emphases in original). There is nothing improper about making a settlement offer. The concern is that unsophisticated consumers may think that if they don't pay by the deadline, they will have no further chance to settle their [*15] debt for less than the full amount; for the offers are in the idiom of limited-time or one-time sales offers, clearance sales, going-out-of-business sales, and other temporary discounts. In fact debt collectors, who naturally are averse to instituting actual collection proceedings for the often very modest sums involved in the consumer debt collection business, frequently renew their offers if the consumer fails to accept the initial offer.

The objection to allowing liability to be based on such offers is that the settlement process would disintegrate if the debt collector had to disclose the consequences of the consumer's rejecting his initial offer. If he has to say, "We'll give you 50 percent if you pay us by May 14, but if you don't, we'll probably offer you the same or even better deal later, and if you refuse that, we'll probably give up and you'll never have to pay a cent of the debt you owe," there will be no point in making offers. As in previous cases in which we have created safe-harbor language for use in cases under the Fair Debt Collection Practices Act, see *Veach v. Sheeks*, 316 F.3d 690, 693-94 (7th Cir. 2003); *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 876 (7th Cir. 2000); [*16] *Bartlett v. Heibl*, 128 F.3d 497 (7th Cir. 1997); cf. *Diaz v. Prudential Ins. Co. of America*, 424 F.3d 635, 637 (7th Cir. 2005); *Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 331 (7th Cir. 2000), we think the present concern can be adequately addressed yet HN8 the unsophisticated consumer still be protected against receiving a false impression of his options by the debt collector's including with the offer the following language: "We are not obligated to renew this offer." The word "obligated" is strong and even the unsophisticated consumer will realize that there is a renewal possibility but that it is not assured.

This is not to suggest that in the absence of safe-harbor language a debt collector is per se liable for violating section 1692 if he makes the kind of settlement offer that we quoted. We see a potential for deception of the unsophisticated in those offers but we have no way of determining whether a sufficiently large segment of the unsophisticated are likely to be deceived to enable us to conclude that the statute has been violated. For that, evidence is required, the most useful sort being the kind of consumer survey described in *Johnson v. Revenue Management Corp.*, 169 F.3d 1057, 1060-61 (7th Cir. 1999); [*17] see also *Pettit v. Retrieval Masters Creditors Bureau, Inc.*, supra, 211 F.3d at 1062.

Other circuits, perhaps less kindly disposed to survey evidence than we, treat the deceptive character of a debt collector's communication as a question of law, so that if the communication is not deceptive on its face, the plaintiff is forbidden to try to show that it would be likely to deceive a substantial number of its intended recipients. We disagree with that position. The intended recipients of dunning letters are not federal judges, and judges are not experts in the knowledge and understanding of unsophisticated consumers facing demands by debt collectors. We are no more entitled to rely on our intuitions in this context than we are in deciding issues of consumer confusion in trademark cases, where the use of survey evidence is routine.

But we emphasize that HN9 survey evidence in debt-collection as in trademark cases must comply with the principles of professional survey research; if it does not, it is not even admissible, Fed. R. Evid. 702; *Citizens Financial Group, Inc. v. Citizens National Bank of Evans City*, 383 F.3d 110 (3d Cir. 2004); *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477 (5th Cir. 2004); [*18] *Starter Corp. v. Converse, Inc.*, 170 F.3d 286, 296-97 (2d Cir. 1999), let alone probative of deception. We are exceedingly doubtful that any lawyer involved in representing debtors would be deceived by the settlement offers made by debt collectors, and doubt therefore that any cases based on such offers could survive summary judgment or even a motion to dismiss were the offer directed to the consumer's lawyer rather than to the consumer. This illustrates our earlier point about the importance of distinguishing between lawyers and unsophisticated consumers in applying section 1692e.

The last question presented by these cases is whether HN10 a claim of deception can ever be rejected in this circuit on the pleadings, since we treat issues of deception as ones of fact rather than of law. The answer is yes. A plaintiff might rest on the text of the communication, and have no other evidence to offer, and then if there was nothing deceptive-seeming about the communication the court would have to dismiss the case. *Taylor v. Cavalry Investment, L.L.C.*, supra, 365 F.3d at 574-75 ("if it is apparent from a reading of the letter that not even 'a significant fraction of the population' would be misled [*19] by it. . ., the court should reject it without requiring evidence beyond the letter itself"); *McMillan v. Collection Professionals, Inc.*, supra, 455 F.3d at 760 ("undoubtedly, there will be occasions when a district court will be required to hold that no reasonable person, however unsophisticated, could construe the wording of the communication in a manner that will violate the statutory provision"). Or the defendant might have used clear statutory language, as in *Jang v. A.M. Miller & Associates*, 122 F.3d 480, 483-84 (7th Cir. 1997), or our safe-harbor language. There might also be a case in which a false or deceptive statement clearly was immaterial, as in *Gutierrez v. AT&T Broadband, LLC*, 382 F.3d 725, 738-40 (7th Cir. 2004); see also *Pettit v. Retrieval Masters Creditors Bureau, Inc.*, supra, 211 F.3d at 1060-62, or was clarified elsewhere, as in *McStay v. I.C. System, Inc.*, 308 F.3d 188, 191 (2d Cir. 2002), or in which a statement claimed to be false was obviously true, as in *Taylor v. Cavalry Investment, L.L.C.*, supra, 365 F.3d at 575-76.

Having answered the questions that we listed at the beginning of our opinion, we can be brief in discussing our four cases. In *Lauer*, the consumer [*20] was represented by a lawyer. The defendant debt collector did not send either the lawyer or his client the written notice required by section 1692g, but instead sent the lawyer a letter that the plaintiff characterizes as coercive because it threatened to dispose of property of the plaintiff that had a purely sentimental value, such as scrapbooks, a wedding gown, and a videotape of the arrival of his adopted child from Korea. The plaintiff doesn't explain which subsection of section 1692 the threat violates, but it could well violate d, e, f, or indeed all three. The district court dismissed the complaint on the ground that communications with a consumer's lawyer are beyond the reach of the Fair Debt Collection Practices Act. That was error.

The defendant in *Lauer* also argues that if the initial communication from the debt collector is to the consumer's lawyer rather than to the consumer himself, the notice requirement is not triggered. If you glance back at section 1692g(a) you will see that it says that the written notice is required to be sent "five days after the initial communication with a consumer." The argument is that if there is no letter sent first ("initial communication") [*21] directly to the consumer, but instead the initial communication is to the consumer's lawyer, the condition for requiring the subsequent written notice containing specified information is not satisfied and therefore such a notice need never be sent either to the lawyer or to the consumer. All that this argument shows is how unsound it would be to suppose that a communication to a person's

lawyer is not a communication to the person. It would make a consumer who had a lawyer worse off than one who did not, because neither he nor his lawyer would have a right to any of the information that the statute requires be disclosed to the consumer.

In *Captain*, before realizing that the consumer was represented, the defendant sent him a letter offering a 30 percent discount off the face amount of the debt, provided payment was received by a specified date. The plaintiff claims that the letter violated section 1692e. Shortly afterward, his lawyer called the defendant and was told that if the debt wasn't paid within two weeks of the date of the initial collection letter (a deadline that had already passed), a $ 15 daily charge would be added to the account balance until the debt was paid in full. [*22] Such a charge, equivalent to an interest rate of 730 percent a year on the unpaid balance of the debt, would violate Indiana law. See Ind. Code §§ 24-4.5-2-203.5, 207(3). *HN11* Although a violation of state law is not in itself a violation of the federal Act, *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470, 473-74 (7th Cir. 2007), a threat to impose a penalty that the threatener knows is improper because unlawful is a good candidate for a violation of sections 1692d and e. The district court dismissed the complaint for failure to state a claim: the settlement-offer charge on the ground that such offers are per se lawful under the Act and the challenge to the lawfulness of the $ 15 a day representation because it was made to a lawyer. Both rulings were erroneous.

*Evory* and *Jackson*, the last two cases (actually sets of cases, but that is of no moment), are pure settlement-offer cases--there were no communications to lawyers. But they are importantly different. In *Evory* the district court dismissed the complaint, and that was error. But in *Jackson* the court granted summary judgment for the defendant. Much of the judge's opinion tracks the discussion in cases that hold that the [*23] kind of settlement offer involved in these cases are nondeceptive per se, and that is wrong. But the judge was willing to consider the survey evidence that the plaintiff had introduced. He concluded that it did not show that the settlement offer was deceptive. He was right and indeed should have ruled the evidence inadmissible. The plaintiff's lawyer at the argument of the appeal conceded that it was not a good survey. We would put the matter more strongly. The respondents in the survey were shown a letter similar to the one the plaintiff had received. The key question they were asked was, "Let's say the person getting this letter does not accept the settlement offer by the deadline date. Do you think that person would feel it is a limited-time offer, or it is not a limited-time offer?" By referring to "deadline date," the questioner signaled that it was a limited-time offer. Leading questions in surveys are improper. E.g., *Scott Fetzer Co. v. House of Vacuums Inc., supra*, 381 F.3d at 488. And "limited-time offer" was not defined. Nor should the respondents have been asked what they thought some *other* recipient of the letter would "feel," especially since they were given no information [*24] about the hypothetical recipient. They should simply have been asked, "What do you think would happen if you didn't accept the offer? Do you think it would be renewed or extended? Or do you think this would be your last chance to get a discount off the amount owed?"

There is compelling evidence that the offers in this and the other cases were not final offers. But that means only that if the offers were understood as such by the targeted recipients, they were deceptive. The anterior issue is whether they were likely to be understood as such by a substantial number of unsophisticated consumers. Maybe they were, but some evidence beyond the face of the offer was required to establish a prima facie case, and it was not presented.

So *Jackson* is affirmed; the other three decisions are reversed and the cases remanded for further proceedings consistent with this opinion.

Copyright © 2007 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.
Your use of this service is governed by Terms & Conditions . Please review them.