```
           IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| JOHN W. OLIVER, III,<br>         Plaintiff,<br><br>     v.<br><br>AMERICAN HOME MORTGAGE<br>SERVICING, INC.,<br>         Defendant. | CIVIL NO. 09-0001(NLH)(JS)<br><br>**OPINION** |

**APPEARANCES:**

Lewis G. Adler, Esquire
Roger C. Mattson, Esquire
Law Office of Lewis Adler
26 Newton Avenue
Woodbury, NJ 08096

    *Attorneys for plaintiff*

Diane A. Bettino, Esquire
Reed Smith, LLP
225 Fifth Avenue
136 Main Street
Suite 1200
Pittsburgh, PA 15222

    *Attorney for defendant*

**HILLMAN**, District Judge

    This putative class action case--one of about a dozen similar actions filed in this District--concerns plaintiff's claims that defendant charged excessive attorney's fees and costs in plaintiff's state court foreclosure action. Defendant has moved to dismiss plaintiff's claims for failure to state a claim. For the reasons expressed below, defendant's motion will be granted.

**BACKGROUND**

On July 30, 2003, plaintiff John Oliver III signed a note and mortgage with Option One Mortgage Corp., on which he subsequently defaulted. On January 3, 2008, Option One Mortgage instituted a foreclosure action against plaintiff in New Jersey Superior Court, Chancery Division. On July 1, 2008, the loan was transferred to defendant American Home Mortgage Servicing, Inc. During the foreclosure proceedings, plaintiff requested a reinstatement quote from defendant, which defendant provided on September 11, 2008. The reinstatement quote requested a total of $31,1550.30, inclusive of attorney's fees of $1,935.00 and costs of $1,518.00. On September 19, 2008, plaintiff paid defendant the full reinstatement amount. According to plaintiff's complaint, however, attorneys for defendant in the foreclosure action prepared another reinstatement quote dated September 26, 2008 which demanded a total of $29,403.48, inclusive of fees and costs of $1,701.18.[1] Thereafter, defendant dismissed the foreclosure with prejudice and discharged the mortgage and lis pendens.[2]

Plaintiff now claims that defendant demanded, and was paid,

---

[1] It is unclear why plaintiff requested and received another reinstatement quote after he had already paid the first reinstatement quote.

[2] It is unclear from plaintiff's complaint on what date defendant dismissed the foreclosure action. The Court's independent review of public state court records shows that defendant voluntarily dismissed the foreclosure on October 8, 2008.

2

fees in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., New Jersey statutes and court rules. Specifically, he contends that he paid $3,453.00 in attorney's fees and costs when only $1,701.18 were due. He purports to bring these claims on his behalf and on behalf of similarly situated individuals who have also paid these allegedly excessive fees.[3] Defendant has moved to dismiss plaintiff's claims on several bases. Plaintiff has opposed defendant's motion.

## DISCUSSION

**A.   Jurisdiction**

Plaintiff has brought his claims pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., as well as under New Jersey state law. This Court has jurisdiction over plaintiff's federal claim under 28 U.S.C. § 1331, and supplemental jurisdiction over plaintiff's state law claims under 28 U.S.C. §

---

[3] Counsel for plaintiff has brought essentially identical claims on behalf of numerous other state court foreclosure defendants against other mortgage lending companies, including two other cases before this Court--<u>Coleman v. Chase</u>, Civ. A. No. 08-2215 (dismissed on November 10, 2009), and <u>Ogbin v. Citifinancial Mortgage Company, Inc.</u>, Civ. A. No. 09-0023. As recently noted by Judge Irenas in <u>Rivera v. Washington Mut. Bank</u>, Civ. A. No. 09-0021, 637 F. Supp. 2d 256, 258 (D.N.J. 2009), "the Court has had particular difficulty ascertaining the alleged facts of this case. No doubt this difficulty stems from the obvious fact that Plaintiffs' counsel has drafted one generic complaint for at least ten other cases--all filed in this district by the same attorneys, all proposing the same class, seven of which were filed on the same day as this case."

1367.

**B.   Analysis**

Defendant has moved to dismiss all claims in plaintiff's complaint on several bases, but primarily on the basis that his claims are barred by New Jersey's entire controversy doctrine. This Court recently dismissed essentially identical claims in Coleman v. Chase, Civ. A. No. 08-2215 (NLH/JS) pursuant to the doctrine, and the Court will do the same in this case.

As described in the Coleman Opinion, the fundamental principle of New Jersey's entire controversy doctrine, codified in Rule 4:30A of the New Jersey Rules of Civil Procedure[4] and applicable in federal court, Bennun v. Rutgers State University, 941 F.2d 154, 163 (3d Cir. 1991), is that "the adjudication of a legal controversy should occur in one litigation in only one court," and "is a reflection of the constitutional unification of the state courts and the comprehensive jurisdiction vested in the Superior Court established under our Constitution, which recognized the value in resolving related claims in one adjudication so that 'all matters in controversy between parties may be completely determined.'"  Mystic Isle Development Corp. v. Perskie & Nehmad, 662 A.2d 523, 529 (N.J. 1995) (quoting N.J. Const., art. VI, § 3, ¶

---

[4]Rule 4:30A of the New Jersey Rules of Civil Procedure, provides that "[n]on-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of omitted claims to the extent required by the entire controversy doctrine . . . ." N.J. Ct. R. 4:30A.

4

4).

The entire controversy doctrine serves three fundamental purposes: "(1) the need for complete and final disposition through the avoidance of piecemeal decisions; (2) fairness to parties to the action and those with a material interest in the action; and (3) efficiency and the avoidance of waste and the reduction of delay." DiTrolio v. Antiles, 662 A.2d 494, 502 (N.J. 1995).  It is meant to constrain a plaintiff from "withhold[ing] part of a controversy for separate litigation even when the withheld component is a separate and independently cognizable cause of action." Paramount Aviation Corp. v. Agusta, 178 F.3d 132, 137 (3d Cir. 1999).

In determining whether successive claims constitute one controversy for purposes of the doctrine, the central consideration is whether the claims "ar[o]se from related facts or the same transaction or series of transactions" as the state court claims. Fields v. Thompson Printing Co., 363 F.3d 259, 265 (3d Cir. 2004). (quoting DiTrolio, 662 A.2d at 502 (1995)).  The Supreme Court of New Jersey has explained that it is a "commonality of facts, rather than commonality of issues, parties or remedies that defines the scope of the controversy." DiTrolio, 662 A.2d at 503.  It is the knowledge of the existence of a cause of action during the first proceeding that invokes the entire controversy doctrine. Maertin v. Armstrong World Industries, Inc., 241 F. Supp. 2d 434, 456

(D.N.J. 2002) (citing New Jersey state court cases). The party has such knowledge if she "knows, or should have known, of facts which establish that an injury has occurred and that fault for that injury can be attributed to another." Id. (citation omitted); Brown v. Brown, 506 A.2d 29, 30 (N.J. Super. Ct. App. Div. 1986) (concluding that "the entire controversy doctrine ordinarily requires joinder or attempted joinder of constituent causes arising *pendente lite*").

The "boundaries of the doctrine are not limitless," however. Mystic Isle, 662 A.2d at 529. It is well recognized that the entire controversy doctrine does not bar related claims which have not arisen or accrued during the pendency of the original action. McNally v. Providence Washington Ins. Co., 698 A.2d 543 (N.J. Super. Ct. App. Div. 1997). Further, it is an equitable doctrine, and its application is flexible, with a case-by-case appreciation for fairness to the parties. Paramount Aviation Corp. v. Agusta, 178 F.3d 132, 137 (3d Cir. 1999).

The entire controversy doctrine is applicable in the foreclosure context. See In re Mullarkey, 536 F.3d 215, 228 (3d Cir. 2008) (citing to Leisure Technology-Northeast v. Klingbeil Holding Co., 349 A.2d 96 (N.J. 1975) and stating that the case "reiterates the importance of the entire controversy doctrine and confirms that it is applicable to foreclosure proceedings"). New Jersey Court Rule 4:64-5, which governs the joinder of claims in

foreclosure, somewhat narrows the scope of the doctrine, however. Id. That rule provides,

> Unless the court otherwise orders on notice and for good cause shown, claims for foreclosure of mortgages shall not be joined with non-germane claims against the mortgagor or other persons liable on the debt. Only germane counterclaims and cross-claims may be pleaded in foreclosure actions without leave of court. Non-germane claims shall include, but not be limited to, claims on the instrument of obligation evidencing the mortgage debt, assumption agreements and guarantees. . . . .

N.J. Ct. R. 4:64-5. Thus, the entire controversy doctrine applies to foreclosure proceedings, but extends only to "germane" counterclaims. In re Mullarkey, 536 F.3d at 228 (citing Leisure Tech., 349 A.2d at 98-99).

Here, just like in Coleman, plaintiff's claims are barred by the entire controversy doctrine. Plaintiff claims he received two different reinstatement amounts--one demanding $3,453.00 in attorney's fees and costs, and the other demanding $1,701.18 in fees and costs. He claims he paid the first demand amount, which constituted an overpayment of $1,751.82 as demonstrated by the lesser, second reinstatement quote, and which violated the FDCPA, New Jersey state law and court rules. Instead of bringing defendant's alleged violations before the chancery judge, however, plaintiff waited to bring a separate cause of action here. This is improper and violative of the entire controversy doctrine.

First, the doctrine bars plaintiff's claims because they arose out of and during the foreclosure action, and plaintiff was aware

7

of his claims while the foreclosure was still pending. During the pendency of the foreclosure action, plaintiff requested a reinstatement quote. One was provided to him by defendant on September 11, 2008. About a week later, plaintiff paid that quote amount. About another week later, and while the foreclosure action was still open, attorneys for defendant provided another reinstatement quote, this one charging approximately $1,700 less for fees and costs. At this point, plaintiff was aware that he may have overpaid. Defendant did not file its notice of voluntary dismissal until October 8, 2008, and thus, plaintiff had from September 26, 2008 until October 7, 2008 to inform the chancery court judge presiding over the foreclosure action of defendant's apparently contradictory reinstatement quotes. Even if plaintiff did not know specifically that the fees were arguably in violation of federal and state law and court rules,[5] at a minimum, he was

---

[5] Plaintiff was represented by counsel in the foreclosure action. As Judge Thompson recently commented when considering a motion to dismiss similar claims filed by plaintiff's counsel on behalf of another client,

> The Court finds that each of these alleged overcharges and deceptive statements would be readily recognized as overcharges by a competent attorney representing a debtor in a foreclosure action. Such an attorney can be assumed to be familiar with the applicable state court statutes and rules limiting allowable costs, attorneys fees and interest and is certainly familiar with the provisions of his or her own client's mortgage agreement. Similarly, such an attorney would be familiar with the usual costs associated with prosecuting a foreclosure action and would be on guard for overcharges of costs and fees normally assessed in

aware of the discrepancy.  Plaintiff had immediate recourse with the chancery judge in the foreclosure action for issues concerning the reinstatement of his mortgage, yet he failed to take that route as he was required to.[6]

Second, the entire controversy doctrine is also applicable because plaintiff's claims are germane to his foreclosure action, and, accordingly, could have been brought in the foreclosure action.  The New Jersey Appellate Division has addressed on several occasions whether a claim is germane to the foreclosure, and whether it should have been brought in the foreclosure action in lieu of the institution of a subsequent action in contravention of the entire controversy doctrine.  For example, in <u>Leisure Technology-Northeast v. Klingbeil Holding Co.</u>, 349 A.2d 96 (N.J. 1975), the defendant to a foreclosure action filed an answer and

---

such actions.  Therefore, the Court concludes that none of these alleged overcharges and deceptive statements would in fact deceive a competent attorney representing a debtor in a foreclosure action.

<u>Allen v. LaSalle Bank, N.A.</u>, Civ. A. No. 3:08-2240 (D.N.J. Jan. 30, 2009).

[6]When plaintiff requested, received and paid the reinstatement amount, and then received the second reinstatement amount, but prior to the dismissal of the foreclosure action, plaintiff's counsel had already instituted several actions on behalf of numerous other state court foreclosure defendants against other mortgage lending companies asserting essentially identical claims.  Even though plaintiff's counsel in the foreclosure action is different from plaintiff's current counsel in this action, the Court cannot help but comment on the timing of the events.

9

counterclaim alleging that the mortgage lender's fraudulent actions caused him to default on the loan.  The Chancery Court judge granted the lender's motion to strike the affirmative defense, and transferred the counterclaim to the Law Division.  The appeals court reversed, finding that the entire controversy doctrine required the counterclaim to be heard in the foreclosure action, and concomitantly, found that the counterclaim was germane.  The court explained,

> The use of the word 'germane' in the language of the rule undoubtedly was intended to limit counterclaims in foreclosure actions to claims arising out of the mortgage transaction which is the subject matter of the foreclosure action.  We see no intention to prohibit or restrict counterclaims in a more narrow sense. . . . Here the thrust of the counterclaim is the assertion that plaintiff had breached the underlying agreement in relation to which the mortgage was executed and interfered with defendants' rights under that agreement.  In the usually understood sense of the word, these claims were germane to the foreclosure action.  We are persuaded that the single controversy doctrine to which we have referred above requires a liberal rather than a narrow approach to the question of what issues are 'germane.'

Leisure Technology, 349 A.2d at 98-99 (internal citations omitted).

Similarly, in Joan Ryno, Inc. v. First Nat. Bank of South Jersey, 506 A.2d 762, 767 (N.J. Super. Ct. App. Div. 1986), the plaintiff instituted a separate action regarding a lender's breach of the mortgage contract rather than raising that claim as a defense to the foreclosure.  In the second action, the trial judge precluded the establishment of damages relating to the foreclosure, but permitted the establishment of damages relating to the breach

10

of the mortgage contract.  The appeals court reversed, finding that the entire controversy doctrine required that both issues were required to be raised in the foreclosure action.  The court explained,

> We are satisfied that if the single controversy doctrine applied then any claim that plaintiff could have otherwise asserted against defendant by reason of the breach of the commitment should have been barred. . . . In not precluding the second action which involved a component of what plaintiff itself claimed was a particular controversy, it allowed a result hardly consistent with the purpose of the doctrine to eliminate delay, avoid harassment and wasted time of the parties, avoid clogging of the courts and promote fundamental fairness. Our point is that once the doctrine was held applicable, the breach of the commitment and all damages from it were part of a single controversy which included the foreclosure so that plaintiff could not make any claim for breach of the commitment in this later action.

Renyo, 506 A.2d at 766-67 (internal citations omitted).

These cases support that plaintiff's claims are germane to the foreclosure action and should have been brought there.  It is clear that plaintiff's dispute over the foreclosure fees arose out of the mortgage transaction which is the subject matter of the foreclosure action, and are therefore "germane," in the "usually understood sense of the word," to the foreclosure action.  Because they are germane, pursuant to Rules 4:30A, 4:64-5, and 4:7-1[7], plaintiff was

---

[7] N.J. Ct. R. 4:7-1 provides, "Except as otherwise provided by R. 4:64-5 (foreclosure actions) and R. 4:67-4 (summary actions), a pleading may state as a counterclaim any claim against the opposing party whether or not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim. A defendant, however, either failing to

required to assert his claims in the foreclosure action.

Like the Coleman case, this is another example of why the entire controversy doctrine exists. By withholding his claims, of which he was clearly aware during the pendency of his foreclosure action, and then instituting an action here, plaintiff prevented the resolution of the fees and costs issue in the appropriate forum. Plaintiff's attempt to transform a state court foreclosure issue between the two parties into an independent, federal court, putative class action is thwarted by the entire controversy doctrine and its purpose to "eliminate delay, avoid harassment and wasted time of the parties, avoid clogging of the courts and promote fundamental fairness." Renyo, 506 A.2d at 766-67 (citation omitted).[8] Consequently, plaintiff's claims must be dismissed.[9]

---

comply with R. 4:30A (entire controversy doctrine) or failing to set off a liquidated debt or demand or a debt or demand capable of being ascertained by calculation, shall thereafter be precluded from bringing any action for such claim or for such debt or demand which might have been so set off."

[8]If plaintiff were to argue that a class action could not have been brought as a counterclaim to a foreclosure action in the Chancery Court, and, therefore, his claims should not be barred by the entire controversy doctrine, such an argument, even if true, would not permit his claims here. Plaintiff was required to assert any affirmative defenses to the foreclosure and advance any counterclaims arising out of the foreclosure in the foreclosure action. With the fees issue and putative class action properly before the Chancery Court, it would have been for the Chancery Court to decide whether such claims could be advanced. If the Chancery Court judge determined that such claims could not be maintained in the foreclosure action, and no appeal was taken, the claims could have then been severed and transferred to the Law Division. See, e.g., Leisure Technology-Northeast, Inc. v. Klingbeil Holding Co., 349 A.2d 96, 99 (N.J.

**CONCLUSION**

For the reasons expressed above, defendant's motion to dismiss will be granted.  An appropriate order will be entered.

Date: November 19, 2009                   s/ Noel L. Hillman

At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.

---

Super. Ct. App. Div. 1975) (reversing chancery judge's severance and transfer of counterclaims to the law division because the counterclaims were germane to the foreclosure and required to be asserted there pursuant to the entire controversy doctrine).

[9] Even if the entire controversy doctrine did not bar plaintiff's claims, this Court would be inclined to follow the reasoning of Judge Irenas, who substantively considered--and dismissed--the same claims advanced here in Rivera v. Washington Mut. Bank, Civ. A. No. 09-0021, 637 F. Supp. 2d 256 (D.N.J. 2009), Martino v. Everhome Mortg., Civ. A. No. 09-0011, 639 F. Supp. 2d 484 (D.N.J. 2009), Skypala v. Mortgage Electronic Registration Systems, Inc., Civ. A. No. 08-5867, 2009 WL 2762247 (D.N.J. Sept. 1, 2009), and Perkins v. Washington Mut., FSB, 2009 WL 2835781 (D.N.J. Sept. 4, 2009).